## UNITED STATES v. SIEGEL et al.
### No. 9012.

Circuit Court of Appeals, Eighth Circuit.
July 30, 1931.

Rehearing Denied Oct. 8, 1931.

MARTINEAU, District Judge, dissenting.

George C. Dyer, Asst. U. S. Atty., of St. Louis, Mo., and Edward H. Horton, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Louis H. Breuer, U. S. Atty., of Rolla, Mo., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for the United States.

Rhodes E. Cave, of St. Louis, Mo. (P. Taylor Bryan, George H. Williams, James C. Jones, Lon O. Hocker, and Frank H. Sullivan, all of St. Louis, Mo., on the brief), for appellees.

Before STONE and GARDNER, Circuit Judges, and MARTINEAU, District Judge.

GARDNER, Circuit Judge.

In 1919 Alfred J. Siegel, appellees' testate, was the owner of 255 shares of the capital stock of the Third National Bank of St. Louis, Mo. During that year the Third National Bank, the Mechanics-American National Bank, and the St. Louis Union National Bank, all located in St. Louis, Mo., entered into an agreement of consolidation or merger. This agreement provided that consolidation was to be effected under the charter of the

Third National Bank, and that the capital of the consolidated bank should be $10,000,000, represented by 100,000 shares of a par value of $100 each, with a surplus of $5,000,000, and undivided profits of $500,000.

At the time of the execution of the consolidation agreement, the capital stock of the Third National Bank was $2,000,000, its surplus $2,000,000, and its undivided profits $350,000, or a total assets of $4,350,000. To enable it to contribute net assets of $5,250,000 to the consolidated bank, its capital stock was increased by $1,000,000, and $500,000 of additional shares of stock were sold to its then stockholders at a price of $200 per share. The capital and surplus of the Mechanics-American National Bank was similarly increased, and thereafter, pursuant to the agreement of consolidation, the name of the Third National Bank of St. Louis was changed to "First National Bank in St. Louis." The business and assets of the three consolidating banks were transferred to the First National Bank in St. Louis, and the business continued under the charter of the Third National Bank. 33,333⅓ shares of the stock of the consolidated bank were allotted to the stockholders of each of the consolidating banks, upon the delivery by the stockholders of their certificates of stock in the consolidating banks duly indorsed for cancellation. The banks concerned each turned over to the First National Bank in St. Louis (the consolidated bank) net assets of an agreed value of $5,250,000, making total assets of $15,750,000, and in addition thereto, assets in an amount sufficient to cover all state and city taxes assessed to March 31, 1919, and all assessed and estimated federal taxes to that date. The capital, surplus, and undivided profits of the consolidated bank were fixed, however, at only $15,500,000, and the excess of $250,000, contributed ratably by each of the consolidating banks, was set aside in a special trust fund for the old stockholders of the Third National Bank, as representing the agreed excess value of the business of that bank over the business of each of the other consolidating banks. Each stockholder of the three consolidating banks received 1⅓ shares of stock in the consolidated bank for each share formerly owned by him in his consolidating bank.

Alfred J. Siegel, appellees' testate, as one of the stockholders of the Third National Bank, received 340 shares of stock in the First National Bank in St. Louis, in lieu of 255 shares which he had theretofore held in the Third National Bank. He did not report any gain or loss accruing to him because of this transaction, and the Commissioner of Internal Revenue determined his gain therefrom to be the sum of $8,500, being the difference between the aggregate par value of his 255 shares in the Third National Bank of St. Louis, surrendered by him, and the aggregate par value of his 340 shares in the First National Bank in St. Louis, and assessed a tax deficiency for the calendar year 1919 in the sum of $2,509.84. On appeal to the Board of Tax Appeals, the ruling of the Commissioner was affirmed, and the taxpayer thereupon paid the deficiency assessment under protest, and this action was brought to recover the payment so made. The appellees had judgment in the lower court, and the government has appealed.

■■ It is contended by the appellees on this appeal, as it was in the lower court, that the interest of the taxpayer after consolidation or merger, was precisely the same interest held by him in the Third National Bank of St. Louis before consolidation, and hence there was no taxable gain arising from the transaction, and that the excess in the par value of the stock received by the taxpayer over the par value of the stock exchanged, was in the nature of a stock dividend. The government, on the other hand, contends that the 255 shares of stock of the Third National Bank, which were exchanged for 340 shares of stock of the First National Bank in St. Louis, represented interests fundamentally and materially different, and that the transaction was therefore not a stock dividend, but gave rise to a realizable taxable income within the meaning of the Sixteenth Amendment to the Constitution, and of section 202 (b), Revenue Act of 1918 (40 Stat. 1060).

By the Sixteenth Amendment to the Constitution, Congress was empowered to lay and collect taxes on income from whatever source derived. Section 202 of the Revenue Act of 1918 provides, among other things, that:

"When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; but when in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as tak-

ing the place of the stock, securities, or property exchanged.

"When in the case of any such reorganization, merger or consolidation the aggregate par or face value of the new stock or securities received is in excess of the aggregate par or face value of the stock or securities exchanged, a like amount in par or face value of the new stock or securities received shall be treated as taking the place of the stock or securities exchanged, and the amount of the excess in par or face value shall be treated as a gain to the extent that the fair market value of the new stock or securities is greater than the cost (or if acquired prior to March 1, 1913, the fair market value as of that date) of the stock or securities exchanged."

If, as contended by appellees, the transaction in question resulted in effect in the issuance of a stock dividend to the taxpayer, then under the doctrine announced in Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, no taxable income resulted. Income is a gain derived from capital, from labor, or from both combined (Stratton's Independence v. Howbert, 231 U. S. 399, 34 S. Ct. 136, 58 L. Ed. 285), and includes profits gained through the sale or conversion of capital assets. Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. Income is, therefore, not confined to cash. As said by Mr. Justice Brandeis in Marr v. United States, 268 U. S. 536, 45 S. Ct. 575, 576, 69 L. Ed. 1079: "The government insists that identity of the business enterprise is not conclusive; that gain in value resulting from profits is taxable as income, not only when it is represented by an interest in a different business enterprise or property, but also when it is represented by an essentially different interest in the same business enterprise or property; that, in the case at bar, the gain actually made is represented by securities with essentially different characteristics in an essentially different corporation; and that, consequently, the additional value of the new securities, although they are still held by the Marrs, is income under the rule applied in United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Rockefeller v. United States, 257 U. S. 176, 42 S. Ct. 68, 66 L. Ed. 186; and Cullinan v. Walker, 262 U. S. 134, 43 S. Ct. 495, 67 L. Ed. 906. In our opinion the government is right."

If the interest of the taxpayer after the merger or consolidation was fundamentally and materially different from his interest prior thereto, then a taxable income resulted from the transaction. While the First National Bank in St. Louis continued under the charter issued to the Third National Bank, it was, in our opinion, a substantially and fundamentally different institution after the merger of these banks than it had theretofore been. The consolidating banks, other than the Third National Bank, were left without property and without liabilities, both the property and the liabilities of these institutions having passed to the consolidated bank. Hence, the assets and liabilities of the First National Bank in St. Louis were vastly different from those of the Third National Bank. Its stockholders were a different body, and the taxpayer held a different proportional interest in the consolidated bank than he had held in the Third National. The liabilities of the stockholders were different; the volume of the business was different; the customers were different. This difference was not such as results from a stock dividend. Where a stock dividend issues, the enterprise remains the same. The interests of the stockholders remain the same and in the same proportions. A stock dividend is a conversion of surplus or undivided profits into capital stock, which is distributed to stockholders in lieu of a cash dividend. It implies a continuance of the corporation with the same assets and the same liabilities. But in the instant case, prior to the consolidation, the taxpayer's interest in the Third National Bank was $^{255}/_{25,000}$ of the stock, but after consolidation his interest was $^{85}/_{25,000}$ of the stock, so that his relative interest was reduced from approximately 1 per cent. in the Third National Bank to approximately one-third of 1 per cent. in the First National Bank in St. Louis. Here, the distribution of stock resulted from the taking over by the First National Bank in St. Louis of all of the assets and liabilities of the three consolidating banks, including the one under whose charter it continued to exist.

In this process of consolidation, the First National Bank in St. Louis took from the consolidating banks all their assets, including their accumulated surplus, and gave in exchange therefor its stock. But not only did the taxpayer, as a result of the merger or consolidation, receive 340 shares of stock in the consolidated bank, but there was set apart $250,000 in a special trust fund for the stockholders of the Third National Bank, representing the agreed excess of the value of

the business of that bank over the business of each of the other consolidating banks, and he was entitled to his interest in this special fund. While it is not claimed that any part of the tax assessed was on any sum received by the taxpayer out of this fund, yet he had such interest as a result of the consolidation, and his interest in the consolidated bank was not therefore the same as that formerly held by him. Confessedly, his interest in the $250,000 represented an interest which he had had in the Third National Bank, but which he did not have in the First National Bank in St. Louis. In other words, after the consolidation his interest represented a different interest than that held by him prior thereto. We are of the view that the exchange in the instant case was not in the nature of a stock dividend.

It was held by the Supreme Court in Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520, that the mere identity of an institution was not controlling, for in that case there was an entire difference in corporate entity between the new and the old companies, but because the new company was merely a reorganization of the old company, it was held there was no realization of a taxable income by the exchange of shares.

Under the doctrine announced in Marr v. United States, 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079; United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Rockefeller v. United States, 257 U. S. 176, 42 S. Ct. 68, 66 L. Ed. 186; and Cullinan v. Walker, 262 U. S. 134, 43 S. Ct. 495, 67 L. Ed. 906, the gain realized by the taxpayer is taxable not only when it is represented by an interest in a different business enterprise or property, but also when it is represented by an essentially different interest in the same business enterprise or property, and the mere fact that the corporate existence of the Third National Bank was continued is not controlling. The gain here sought to be taxed was represented by shares with essentially different characteristics in an essentially different corporation, and hence the added value, although still held by the taxpayer, is taxable income.

In determining that there resulted from this transaction and exchange of property a taxable gain to the taxpayer, the Commissioner followed the rule prescribed by section 202 of the Revenue Act of 1918, supra, and, under the facts here disclosed, was warranted in so doing.

It follows that the decision of the lower court should be and is reversed, and the cause is remanded for further proceedings consistent herewith.

MARTINEAU, District Judge, dissenting.