## COMMISSIONER OF INTERNAL REVE-NUE v. E. C. ATKINS & CO.

### No. 7845.

Circuit Court of Appeals, Seventh Circuit.

May 6, 1942.

784

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Bernard Chertcoff, and Carlton Fox, Spec. Asst. Attys. Gen., for petitioner.

Frank J. Albus and John F. Greaney, both of Washington, D. C., for respondent.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

By this review the correctness of a decision of the Board of Tax Appeals holding the taxpayer entitled to a credit under section 26(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836, because of a covenant in its written contract with its noteholders which prohibited certain dividends, is questioned.

Respondent is an Indiana corporation with a capital of 60,000 shares of common stock of par value of $50 each. Of 52,000 shares issued, it has repurchased 946 and retains them in its treasury. In 1932 it borrowed $400,000 secured by pledge of certain collateral, upon notes maturing serially from March 1, 1933 to March 1, 1937. The indenture under which the collateral was deposited provided that the pledgor should not, so long as any of the notes remained unpaid, declare any dividends, provided, however, that the covenant should "not be construed to prevent declaration of dividends payable in stock of the company." At the end of the taxable year 1936, a substantial amount of the debt remained unpaid. In both 1935 and 1936 a deficit existed in the surplus and capital accounts of the company. For the year 1936 the taxpayer, in computing its undistributed net income tax, claimed a credit under Section 26(c) (1). This the Commissioner disallowed. The Board held with respondent and that decision is now on review.

The Revenue Act of 1936 levied a tax upon the undistributed net income of corporations, allowing, however, certain credits, among these being that provided for by Section 26(c) (1) as follows: "An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating * * * a written contract * * * which * * * expressly deals with the payment of dividends." Petitioner contends that inasmuch as the contract providing security for payment of the notes prohibited only distribution of cash or property, the company might have issued stock dividends

and is consequently, not entitled to the asserted credit.

When Congress created a credit for the amounts "which can be distributed" its plain intent was to include amounts which might be legally distributed. The judiciary will not attribute to the legislature an intent, in defining credits, to include dividends in violation of law or any other than those which might be distributed in accord with the statutes of the domicile of the corporation.

Likewise, when the parties voluntarily framed their contract for security of these notes, we can not, without violence to logic, assume that they meant to include illegal acts by the corporation. Consequently, in the provision allowing distribution of stock dividends we can attribute no intent to the parties contemplating stock dividends other than those which might be legally issued. We can not assume that they meant to except not only stock dividends legally authorized but also those in fraud or violation of the laws of the state.

It follows that the specific question confronting us is whether under the restrictive contract governing the noteholders' rights, there were any amounts earned in 1936 which might legally have been distributed as stock dividends.

The Indiana Statutes (Burns' Indiana Statutes Annotated, Vol. 6, sec. 25-211) provide that directors shall have power to declare dividends out of surplus earnings, net profits or surplus but that none shall be paid if the corporation is, or is thereby rendered insolvent or if its capital is, or thereby becomes impaired. The clear purport of this enactment is decisive that in 1936 the corporation could not legally have paid any dividends, because the record is undisputed that its capital was then impaired. The taxpayer, therefore, was by statute prohibited from declaring any dividends of any character in the year 1936.

Any distribution that further impaired or lessened the assets would have been a breach of the contract securing the notes. The purpose of that agreement was, without doubt, to prevent transfer of assets to stockholders or impairment of capital at the peril of the noteholder creditors. So any dividend in cash or property would have been a breach of the covenant. And a common stock dividend, in order to be permitted by the contract, must have been a legal one. Such a dividend represents no taxable gain to stockholders. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570. It results from bookkeeping, by creating a charge to surplus and a corresponding credit to capital. 11 Fletcher, Cyc. on Corporations, Secs. 5361, 5362; Eisner v. Macomber, 252 U.S. 189, 210, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; United States v. Siegel, 8 Cir., 52 F.2d 63, 65, 78 A.L.R. 672. Where there is no surplus, there is nothing against which it may be charged and it is unauthorized. If one had been issued here, it would have violated the principles not only of sound finance and resulted in no financial gain to the shareholders, as is required by Sections 115(c) and 27(h) of the Revenue Act, 26 U.S.C.A. Int.Rev.Acts, pages 868 and 838, but also those of the statutory law of Indiana.

Surely there is nothing in the terms of the contract indicating that the parties intended to deviate in the slightest from the universally accepted meaning of a stock dividend or that the parties contemplated disregarding the fundamental principle of corporation law, that to justify a proper stock dividend there must be a transfer of surplus to capital. There having been no surplus, there could have been no addition to capital back of a stock dividend.

Petitioner suggests that respondent could have applied to the Secretary of State for an amendment to its charter authorizing preferred stock and that this it might have issued as a stock dividend. But the Statute of Indiana forbids issuance of any dividends when the capital is impaired and indicates clearly that the state would not authorize the issuance of preferred stock against non-existing assets. There having been a deficit in the corporation's surplus accounnt, there remained nothing which the company could transfer to the capital accont to justify an issuance of preferred stock. It is unbelievable that the Secretary of State would have allowed such action. We must assume that in the conduct of a public office, everything will be done properly and according to the ordinary legal course of affairs. Schell's Ex'rs v. Fauché, 138 U.S. 562, 11 S.Ct. 376, 34 L.Ed. 1040.

The statute of Indiana, (Burns' Indiana Statutes Annotated, Vol. 6, Sec. 25-221), in Section 22 authorizes an amendment to articles of incorporation if the amendment would have been authorized as an original article and our attention is directed to no

Indiana authority that justifies us in concluding that a corporation may be organized under original articles in Indiana which provide for the issuance of stock against nonexisting assets. The Secretary is required to approve an amendment only if he finds that it conforms to law. We agree with the Board that in view of the provision of Section 12 of the Indiana Corporation Act, we should not assume the possibility of authorization of issuance of preferred stock where there are no assets back of it, thereby further impairing the capital account.

■ The Government relies upon Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29, but in that case the taxpayer was clearly not within the protection of the pertinent statute. The prohibition against payment of dividends there did not arise from a binding contract which the statute recognizes as basis for a credit but was written in the charter of the corporation which the stockholders might have amended at any time. Nor does the case of United States v. Dakota Tractor & Equipment Co., 8 Cir., 125 F.2d 20, militate against our conclusion. There, surplus earnings existed and against these, common stock dividends could be and were declared. Here there is no surplus,—nothing against which common or preferred stock dividends might have been declared.

The decision is affirmed.