Louis Wellhouse, Jr., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Ely Meyer, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 112004, 112005. Promulgated February 28, 1944.

*Max F. Goldstein, Esq.*, for the petitioners.
*J. Marvin Kelley, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: The deficiency notice in each case determines that the 200 shares of preferred stock received by the petitioner constitutes income within the Sixteenth Amendment to the Constitution, and $20,000 is added to income as "dividends."

The petitioners seek, first of all, to demonstrate error in the assertion of realization of income by showing receipt of the stock in the course of a nontaxable reorganization, i. e., a recapitalization, under section 112 (b) (3) and (g) (1) of the Internal Revenue Code.[1] In our opinion, they have not so shown, for, assuming without deciding that there was, in form, such reorganization through recapitalization, within the definition furnished in section 112 (g) (1), that alone does not apply the nonrecognition provisions of section 112 (b) (3). *Ernst Kern Co.*, 1 T. C. 249, 263; *Gutbro Holding Co.*, 47 B. T. A. 374, 378, 379. Under the well crystallized doctrine of *Gregory* v. *Helvering*, 293 U. S. 465, there must be corporate business purpose in the transaction. We find none in the facts, and, since *Bass* v. *Commissioner*, 129 Fed. (2d) 300, and *Jacob Fischer*, 46 B. T. A. 999, principally relied upon by the petitioners, did, as plainly shown in the facts, involve such business purpose in the reorganization involved, we fail to find authority in them for our present purposes.

Here, under the evidence, the purpose was to permit the petitioners, stockholders in the corporation, to pay off their debt. That in so doing it was desired to retain the control of the corporation in the petitioners, because of some peculiarity in the business done, and to keep others from acquiring familiarity with the business methods of United, is, in our opinion, immaterial. The recapitalization was not necessary, either for keeping control or keeping the public unaware of the corporation's affairs, for the petitioners already enjoyed control, and had nothing been done the public would have continued to be uninformed as to the business of United. Sale of the stock necessary to pay the indebtedness would not have divested petitioners of control, nor would declaration of a dividend from the considerable corporate surplus on hand.

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

(1) The term "reorganization" means \* \* \* (E) a recapitalization, \* \* \*

The record fails to establish any need in the corporation itself, as distinguished from the petitioners-stockholders, for funds at the time of the change in corporate structure. By 1939, when the transactions in question took place, United's business had begun to improve. Furthermore, the petitioners did organize a new corporation, together with a third person, for the manufacture of a new product. It was unsuccessful. United later went into this new business. It is not clear whether the organization of the new corporation occurred before or after the exchange of common stock for preferred. It is clear that petitioners did not use the preferred stock, which they acquired in the exchange, for the corporation or in connection with United's participation in this new line of business. There is no evidence that either United or the petitioners required any capital, other than that already a part of United, to finance any new venture. The petitioners have never, in fact, made any use of these shares of preferred stock for any business purpose related to United. It is to be noted further that although the issuance of 2,800 shares of preferred stock was authorized, only 400 were ever issued and 300 of these were used almost immediately to satisfy petitioners' personal obligations to the estate of Louis Wellhouse, Sr. The evidence clearly establishes that the petitioners had in mind the payment of these obligations when they caused United's charter to be amended and then exchanged their common stock for preferred. The readjustment of capital in these cases was not "undertaken for reasons germane to the conduct of the venture in hand," but was "an ephemeral incident, egregious to its prosecution."[2] To pay the shareholders' personal obligations is not one of the transactions contemplated as the purpose of corporate reorganization. We conclude that there was no such reorganization as to confer nontaxability upon any gain realized.

We therefore next inquire whether such gain was realized. We have found as fact that there was exchange of stock for stock, for the old common stock was actually turned in and canceled, and the new preferred was issued to petitioners. We so held under similar facts in *Jacob Fischer, supra.* See *H. E. Muchnic, Administrator,* 29 B. T. A. 163. We therefore examine such facts in the light of the further contentions of the parties.

The respondent having determined that the full $20,000 par value of the preferred stock received by each petitioner was income, it is of course incumbent upon the petitioners to demonstrate error in such determination, regardless of the reasons suggested therefor. *Edgar M. Carnrick,* 21 B. T. A. 12. However, upon brief, the respondent takes the view that the $20,000 constitutes taxable dividend, cash or in stock, or that it was essentially equivalent to distribution of a taxable dividend. The applicable statutes, section 22 (a) and section 115

---

[2] *Helvering* v. *Gregory,* 69 Fed. (2d) 809, 811.

(a), (f), and (g), are set forth in the margin.[3]  The petitioner therefore argues (in addition to the above discussed contention as to nontaxable reorganization) that the facts negative each of respondent's views.

We dispose at once of the idea that there may have been cash dividend. No cash passed. We find no cash dividend.

Was there stock dividend? In our opinion there was not. No dividend was declared, and we have indicated the necessity of declaration as requisite to finding of stock dividend. *J. Weingarten, Inc.*, 44 B. T. A. 798; *Humphryes Manufacturing Co.*, 45 B. T. A. 114. Nor was there any capitalization of surplus. Surplus remained the same before and after the change in corporate structure. Webster's New International Dictionary defines "stock dividend" as:

Stock dividend. *Finance.* The distribution by a corporation to its shareholders of additional stock created by capitalizing its surplus or from the stock of subsidiary corporations. Also, the stock so distributed.

The case of *Bass v. Commissioner, supra,* at pages 304 and 305, contains the following discussion on this point:

"A stock dividend always involves a transfer of surplus (or profit) to capital stock." Graham and Katz, Accounting in Law Practice, 2d ed. 1938, § 80. As the court said in *United States v. Siegel*, 8 Cir., 1931, 52 F. 2d 63, 65, 78 A. L. R. 672: "A stock dividend is a conversion of surplus or undivided profits into capital stock, which is distributed to stockholders in lieu of a cash dividend." Congress itself has defined the term "dividend" in § 115 (a) of the Act as meaning any *distribution* made by a corporation to its shareholders, whether in money or in other property, *out of its earnings or profits.* In *Eisner v. Macomber,* 1920, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, both the prevailing and the dissenting opinions recognized that within the meaning of the revenue acts the essence of a stock dividend was the segregation out of surplus account of a definite portion of the corporate earnings or profits theretofore available for

---

[3] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from * * *; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.  * * *

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDENDS.—The term "dividend" when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year * * * without regard to the amount of the earnings and profits at the time the distribution was made. * * *

*          *          *          *          *          *          *

(f) STOCK DIVIDENDS.—

(1) GENERAL RULE.—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution.

*          *          *          *          *          *          *

(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

dividends, the freezing of such segregated earnings as part of the permanent capital resources of the corporation by the device of capitalizing the same, and the issuance to the stockholders of additional shares of stock representing the profits so capitalized. * * *

This result is not changed by section 115 (b) of the Internal Revenue Code, which provides that "* * * every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits * * *," because that section neither "prescribes the criteria for determining when a distribution has taken place, as distinguished from an exchange which is governed by section 112," [4] nor "converts what is not income into income." [5]

We conclude that no stock dividends are here involved, and that section 22 (a), in so far as it relates to dividends, and section 115 (a) and (f) (1) of the Internal Revenue Code are not applicable.

(b) Respondent next contends in the alternative that the transactions in the instant cases fall within the purview of section 115 (g) of the Internal Revenue Code, i. e., that the distribution by United of 400 shares of preferred stock and the cancellation of the 400 shares of common stock took place at such time and in such manner as to make the distribution and cancellation essentially equivalent to the distribution of a taxable dividend. A similar argument was rejected in the case of *H. Y. McCord*, 31 B. T. A. 342, in which this Court stated at page 343: "No question arises under section 115 (g) because, as we have seen, the cancellation of outstanding shares was not for cash, but only in exchange for new common and preferred shares." Section 115 (g) provides that "the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend." As has already been stated, there was no distribution out of earnings and profits in the instant cases; the surplus and capital stock accounts both remained unchanged in amount. To come within the scope of section 115 (g), the distribution must result in a *pro tanto* reduction of the corporation's capital; in other words, section 115 (g) is limited to a distribution out of earnings and surplus *South Atlantic Steamship Line*, 42 B. T. A. 705, 714. We conclude that section 115 (g) of the Internal Revenue Code is not applicable.

The gravamen of respondent's position in these cases is stated in his brief as follows: "What actually transpired in the instant case is that there was a partial liquidation of the common stock resulting in a paid-in surplus followed by either (1) a cash dividend, the profits of which were used to acquire preferred stock, /or (2) a taxable divi-

[4] *Bass* v. *Commissioner, supra*, at page 308.
[5] *Leland* v. *Commissioner*, 50 Fed. (2d) 523, 525.

dend in preferred stock on common to the extent of the preferred stock issued." To agree with that theory would require the breaking . up of a single transaction, which is an exchange, into a series of transactions. "Whether an apparently integrated transaction shall be broken up into several separate steps and whether what apparently are several steps shall be synthesized into one whole transaction is frequently a necessary determination in deciding tax consequences." *Dobson* v. *Commissioner*, 320 U. S. 489. See also, *Helvering* v. *New Haven & S. L. R. Co.*, 121 Fed. (2d) 985, 988. It is the duty of this Court to make that determination from the evidence. The facts show that United did not declare a stock dividend in form and that the petitioners never had any thought at the time of these transactions of effecting a partial liquidation of United. We, therefore, can find no basis in the evidence in these cases which justifies regarding the transactions here in question in any other light than that of an exchange. To support respondent's contention would require a finding of fact contrary to the evidence.

The respondent further contends upon brief that the petitioners realized a taxable gain upon the disposition by each of 150 shares of preferred stock for $15,000 in partial satisfaction of their respective indebtedness to the estate of Louis Wellhouse, Sr. The gain or loss from that transaction is not properly before this Court, as that issue was not raised by the pleadings. *H. Elkan & Co.*, 2 T. C. 597, 606. 607; *William H. Joseph*, 43 B. T. A. 273; *Warner G. Baird*, 42 B. T. A. 970, 975; *Citizens Nat. Trust & Sav. Bank of Los Angeles*, 34 B. T. A. 140, 145. Even if the respondent were permitted to assert this issue at this time, he could not prevail because, looking at these transactions as a whole, it is obvious that there was no gain realized by the petitioners on the disposition of these shares of preferred stock. This is true whether we regard their basis as the cost of the common shares for which they were exchanged, to wit, $123.37, or the fair market value of each share of preferred stock, to wit, $100. The increase in the book value of the remaining shares of common stock is not taxable until some disposition is made thereof. *Eisner* v. *Macomber*, 252 U. S. 189; *Malone* v. *Commissioner*, 128 Fed. (2d) 967; *Clark* v. *Commissioner*, 77 Fed. (2d) 89.

Petitioners do not assign as error denial of any loss as a result of these transactions under section 112 (a) of the Internal Revenue Code,[6] and respondent does not claim they realized a taxable gain under that section. It follows that the Commissioner's determination of deficiencies in the income tax liability of the petitioners was in error.

*Decisions will be entered under Rule 50.*

---

[6] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.