ALICE H. BAZLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. ROBERT BAZLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 1520, 1521.   Promulgated February 28, 1945.

*Frederick E. S. Morrison, Esq.,* and *Calvin H. Rankin, Esq.,* for the petitioners.

*W. J. McFarland, Esq.,* for the respondent.

OPINION.

OPPER, *Judge*: It is respondent's position that although the exchange of the common stock held by petitioner in J. Robert Bazley, Inc., for new-common stock and bonds of the same company conforms superficially to the provisions specifying nonrecognition of gain, the transaction lacked a legitimate business purpose and hence fails to comply with the true statutory requirements. *Gregory* v. *Helvering*, 293 U. S. 465. Looking only at the language of the reorganization section, there was a technical recapitalization; that is, a reorganization within the statutory definition of section 112 (g) (1) (D). *Annis Furs, Inc.*, 2 T. C. 1096; *Clarence J. Schoo*, 47 B. T. A. 459; appeal dismissed (C. C. A., 1st Cir.). And since there was an exchange of stock for stock and securities in the same corporation, the language of the section forbids recognition of gain or loss. Sec. 112 (b) (3).

But that mere formal compliance is not sufficient, at least since the decision in the *Gregory* case. Hence the real issue is whether it has been satisfactorily established that there was a true business purpose for the operation by which petitioners were enabled to substitute for the entire outstanding stock of the corporation other stock possessing the same attributes and, in addition, instruments in the form of bonds representing newly created fixed obligations of the corporation as to both principal and interest. A mere desire to effect a change in the form in which their property interests were held, but in such a manner

as to escape the tax consequences otherwise called for, would not under the *Gregory* case furnish the necessary validating purpose. *Louis Wellhouse, Jr.*, 3 T. C. 363. In that situation it would be of no consequence whether the transaction should be treated in part as an exchange of stock for stock under section 112 (b) (2) of the Internal Revenue Code,[1] since no claim is made that any gain was realized upon that phase of the transaction. If in course of the surrender, cancellation, and redemption of the old stock and the issuance of the new stock and bonds, petitioners received a distribution which was essentially equivalent to the declaration of a taxable dividend,[2] as respondent contends they did by means of the receipt of the bonds, the fair market value of that distribution would be taxable to them as a dividend under the provisions of section 115 (g).

Thus, in *Edith B. Bass*, 45 B. T. A. 1117, we held under somewhat similar circumstances that the redemption of stock of the taxpayer, accompanied by the issuance of other stock, was in part essentially the equivalent of a taxable dividend. This decision, it is true, was reversed (C. C. A., 1st Cir.), 129 Fed. (2d) 300, but upon the reasoning that, since there was no effort there to capitalize accumulated earnings and the earned surplus remained available for future dividend action on the part of the corporation, the similarity to a dividend disappeared. The Circuit Court said in part (pp. 304, 305, 309):

\* \* \* Congress itself has defined the term "dividend" in § 115 (a) of the Act as meaning any *distribution* made by a corporation to its shareholders, whether in money or in other property, *out of its earnings or profits.* \* \* \*

\* \* \* \* \* \* \*

Whether profits are to be capitalized is not a mere matter of bookkeeping; there are important business differences according as one course or the other is pursued. If profits are capitalized by means of a stock dividend such profits are no longer available for the declaration of a dividend at the discretion of the directors but become part of the permanent capital of the corporation, thereby tending to enhance the corporation's credit. If profits are not capitalized they may be distributed as dividends some time in the future; and it would be a con-

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(2) STOCK FOR STOCK OF SAME CORPORATION.—No gain or loss shall be recognized if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation.

[2] Internal Revenue Code.—

"SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

"(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend."

tradiction in terms to say there has been in any sense a "distribution" out of "earnings or profits" when such earnings have been expressly held intact in the surplus account for possible future distribution.

\* \* \* \* \* \* \*

*Gregory* v. *Helvering*, 1935, 293 U. S. 465, 55 S. Ct. 266, 79 L. Ed. 596, 97 A. L. R. 1355, cited by the Board, is no authority for the position taken. \* \* \* In substance, assets of the corporation were distributed to its shareholders and the corporation's surplus was correspondingly reduced. In these circumstances the distribution was held taxable as a dividend. In the case at bar, however, there was a permanent revision of the capital structure pursuant to a plan of recapitalization having a genuine business purpose. The transaction was not a tax-dodging subterfuge. There was in fact no "distribution" out of "earnings or profits."

\* \* \* \* \* \* \*

\* \* \* Of course, the fact that there has been no increase in the aggregate wealth of the shareholders does not in itself establish that they have not received a dividend. *United States* v. *Phellis*, 1921, 257 U. S. 156, 171, 42 S. Ct. 63, 66 L. Ed. 180. On the other hand, neither does this fact establish that the stockholders *have* received a dividend. On that issue the fact is colorless. What distinguishes the present transaction from a stock dividend is that here no portion of the surplus was capitalized.

Under the present facts this reasoning would be inapplicable. Not only did the issuance of fixed obligations inevitably capitalize and imprison a corresponding amount of earned surplus, by reason of the proportionate increase in liabilities as compared with assets and the consequent reduction of surplus; but a specific and declared purpose of the operation was to incorporate in the bonded indebtedness the company's investment in machinery and equipment which was recognized to have been paid for out of accumulated earnings.[3] If the principles upon which the *Bass* case was reversed are followed and the test there designated is applied, the result thus remains the same. Cf. *Louis Wellhouse, Jr., supra.* The elimination by the process here adopted of an equivalent segment of accumulated earnings which would otherwise have been available for the declaration of subsequent dividends requires that this action itself be characterized as a distribution out of earnings and hence as the equivalent of the declaration of a taxable dividend.

On the present record and upon detailed review of all of the aspects urged on behalf of petitioners, we have felt compelled to the conclusion set forth in our findings of fact that no legitimate corporate

---

[3] "Yes, at this time the fixed assets of the corporation were very large in relation to the amount of stock outstanding—that is, to the face value of the stock, due to the fact that there had been an accumulation of profits that had all been turned back into the business, new equipment purchased.

"We might add that the equipment used in this particular type of work is very expensive and requires a great deal of working capital. \* \* \*

"\* \* \* so these fixed assets were here and had been built through accumulation, and it seemed very advisable to reflect this accumulation of earnings in the permanent dedication of these funds and put it into corporation use." (Testimony of petitioner J. Robert Bazley.)

business purpose existed for the so-called recapitalization. Such objectives as to create a security more desirable for the stockholders as being less fluctuating in value, more regular and certain in its income, easier to market for inheritance tax payments, and furnishing greater safety against claims of corporate creditors are easily understandable from the standpoint of the stockholders. They furnish persuasive reasons why the stockholders wanted to change the form of their investment. But, as we have said, a desire to encompass such an exchange without occasioning the tax consequences usually attendant upon those transactions would not supply the necessary purpose as a business or corporate object. And certainly it would be a contradiction in terms to agree with petitioner that the desire to incorporate the undistributed profits into invested capital so as to render them immune from future invasion could be such a business purpose when this very act can be regarded as creating the resemblance to a dividend which the statute subjects to tax. *Bass* v. *Commissioner, supra.*

The purpose most insistently advanced as justifying the exchange was the asserted desire to make the new stock available in larger volume and smaller units for distribution among key employees whose interest in the company it was desired to retain. Such an object would be acceptable as a legitimate purpose of the corporate business. *Jacob Fisher*, 46 B. T. A. 999. But we are unable to satisfy ourselves that such a purpose was ever in fact entertained. After five years, the distribution has never taken place. And no excuse advanced to justify the delay in convincing. Every one points rather in the direction of the assumption that one or another of the same reasons can always be resorted to to cause a further postponement. And most suggest that, if valid, they should have operated to postpone or prevent the "recapitalization" itself, rather than the subsequent distribution.

Thus it is suggested that in the spring of 1939, when the new stock became available, the company's contracts were up for renewal, in the fall the European war commenced, by the following spring the company's earnings statement was unfavorable, and by the end of 1941 this country itself entered the war. But the contract situation was known before the new stock was authorized; the outbreak of war was a factor in the business picture, both uncertain in its effect and typical of other business hazards; the coal business was known to be "up and down"; and the average earnings for the significant years and particularly those for fiscal 1941 are not appreciably at variance with the figures for the company's previous history.

The hazardous nature of the road building business upon which the company was about to embark furnishes an adequate ground

for the apprehension on the part of the stockholders which led to the partial transformation of their investment into fixed obligations, but it is diametrically at variance with the assumption that at the same time the earnings could be so stable and secure as to meet the stated prerequisite for participation on the part of the employees. Finally, the increased corporate earnings since the entry of this country into the war would seem to furnish the anticipated inducement to institute the plan at least by that time, and the fear that war bond purchases might suffer is hard to credit. We are consequently forced to the conclusion that the undisputed facts speak with a clearer voice than the unsupported testimony of petitioner; and that, since the two are inconsistent, the former must shape our ultimate decision. We have accordingly found a complete absence of legitimate corporate business purpose within the *Gregory* principle.

Such cases as *Clarence J. Schoo, supra; Edgar M. Docherty*, 47 B. T. A. 462; appeal dismissed (C. C. A., 1st Cir.); and *Annis Furs, supra*, may be distinguished from the present proceeding on grounds similar to those upon which *Jacob Fisher, supra*, was distinguished from *Edith B. Bass, supra*. Here, as in the *Bass* case, "the record fails to disclose any business purpose of substance" in the transaction. Without attempting to set out the details appearing in the facts of the various cases cited, it is enough to say that in each a benefit to the corporation of greater or less consequence appears as an anticipated result of the reorganizations there undertaken. In the present proceeding, as we have found, the benefits to the business are negligible and insubstantial. The individual stockholders may well have endeavored to establish a foundation for participating in the corporate profits without subjecting the distributions to taxation as dividends. For a subsequent redemption of the bonds would not only fail to qualify as the equivalent of a taxable dividend under 115 (g), but would fall precisely within the terms of section 117 (f) as an item of capital gain,[4] with the accompanying limitations on taxability.[5] But such a purpose, if it existed, would fail to release the operation from the rule in the *Gregory* case. "Putting aside, then, the question of motive in respect of taxation altogether * * * what do we find? Simply an operation having no business or corporate purpose * * * not to reorganize a business or any part of a business, but to

---

[4] Internal Revenue Code, sec. 117 (f).—

"(f) RETIREMENT OF BONDS, ETC.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor."

[5] Internal Revenue Code, sec. 117 (a).

4 T. C.

transfer a parcel of corporate  *  *  *  [securities] to the petitioner."

Reviewed by the Court.

*Decision will be entered for the respondent.*

BLACK and TYSON, *JJ.*, dissent.

---

SMITH, *J.,* dissenting: The majority opinion recognizes that on the facts there was a "technical" recapitalization and reorganization of J. Robert Bazley, Inc., in 1939, but holds that the reorganization lacked "a legitimate business purpose" and therefore must be denied recognition for tax purposes, under the doctrine of *Gregory* v. *Helvering*, 296 U. S. 465.

In the *Gregory* case the Court disregarded, as a mere sham, a corporate entity which was created for the sole purpose of effecting a tax-free transfer of corporate assets to stockholders and which was dissolved immediately after it had served its purpose in carrying out the artifice.

I do not think that the principle of the *Gregory* case is applicable here. It seems to me that the evidence shows a legitimate business reason, perhaps several legitimate business reasons, for the recapitalization. Some of those reasons are plainly set out in the findings of fact. The evidence discloses a further reason, which is not shown in the facts; namely, that under the recapitalization there was set up the basis for an annual deduction of $24,000 of interest on the debenture bonds which were issued in exchange for common stock. Petitioner J. Robert Bazley testified:

A. Furthermore, it seemed to us in conference with this management, that this plan of issuing common stock and debentures would also secure for the corporation certain benefits inasmuch as the fixed charges on the bonds would have the purpose of reducing Federal and State taxes, and it would also enlarge the percentage of dividends on the reduced value of the stock inasmuch as the value of the stock had been reduced.

It seems to me that this reason alone, that is, the reduction of taxable income, might be deemed sufficient to give substance to the recapitalization. The Court observed in the *Gregory* case that: "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, can not be doubted," citing *United States* v. *Isham*, 17 Wall. 496; *Superior Oil Co.* v. *Mississippi*, 280 U. S. 390; *Jones* v. *Helvering*, 71 Fed. (2d) 214.

In *Commissioner* v. *Capento Securities Corporation*, 140 Fed. (2d) 382, the Circuit Court of Appeals for the First Circuit held, affirming 47 B. T. A. 691, that the issuance by a corporation of its preferred stock for its outstanding bonds constituted a recapitalization, and

therefore a statutory reorganization. The purpose of the recapitalization there, which was held to be a legitimate one, was to facilitate the securing of loans from the banks. Distinguishing *Gregory* v. *Helvering, supra,* where "the purported 'reorganization' though following the literal language of the statutory definition, was an operation having no business or corporate purpose," the Court observed that:

* * * There resulted a permanent revision of the capital structure of Raytheon Production Corporation pursuant to a plan of recapitalization—a normal business procedure dictated by the necessity of raising new capital. In such circumstances it is the purpose of the nonrecognition provisions of the Act to save the taxpayer from an immediate recognition of a gain, where, in a popular and economic sense, there has been a mere change in the form of ownership and the taxpayer has not really "cashed in" on the theoretical gain, though a gain may have accrued in a constitutional sense. * * *

See also *Bass* v. *Commissioner* (C. C. A., 1st Cir.), 129 Fed. (2d) 300.

I think that the finding of the Tax Court in this case that the reorganization of *J. Robert Bazley, Inc.,* lacked a true business purpose is contrary to the evidence.

ARUNDELL and VAN FOSSAN, *JJ.,* agree with this dissent.