### Adam A. Adams, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 4109.   Promulgated April 26, 1945.*

*Sydney A. Gutkin, Esq.*, for the petitioner.
*Jonas M. Smith, Esq.*, for the respondent.

*This report has been superseded by report of June 29, 1945, 5 T. C. 351.

## OPINION.

KERN, *Judge*: The respondent has determined and now contends that petitioner received a taxable dividend, as the result of. the exchange of old common stock for new common stock and debenture bonds of the Newark Theatre Building Corporation, to the extent of the latter's accumulated earnings, in the amount of $164,208.82. Respondent relies upon section 115 (a) and (g) of the Internal Revenue Code.[1]

Petitioner surrendered stock having a par value of $590,300, and received in exchange therefor stock having a stated value of $295,150 and debenture bonds of the face value of $295,150. The corporate surplus remained untouched. The authorized capital was reduced to $295,700, and the balance of $295,700 formerly carried in the capital stock account was transferred to an account for the payment of the debenture bonds. No dividend was declared.

Both parties have briefed their contentions upon the assumption that if there was a recapitalization amounting to a reorganization under section 112 (g) (1) (E) of the Internal Revenue Code and an exchange of stock for stock and securities under section 112 (b) (3), then there could not be by that fact itself a taxable dividend resulting from the transaction. Accordingly, respondent contends that the transaction was not a nontaxable reorganization since it was not for any business purpose; while the petitioner contends that it was a recapitalization effected for legitimate business purposes and, therefore, a reorganization upon which no gain or loss should be recognized.

As we pointed out in *Edith B. Bass*, 45 B. T. A. 1117, 1119, the issue in a case such as this is not whether there was a taxable gain result-

---

[1] (a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this chapter (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

\*  \*  \*  \*  \*  \*  \*

(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

ing from an exchange, but whether petitioner received a taxable dividend. While this is a correct statement of the issue, it does not make irrelevant the question of whether there was, in reality, a recapitalization. The facts which would be relevant in proving or disproving the existence of a bona fide recapitalization under the reorganization provisions of the code would also be relevant in proving or disproving that the same transaction amounted to a distribution of a taxable dividend. If facts tended to show the actual accomplishment of a recapitalization having legitimate business purposes, those same facts would tend to prove that the transaction was not the distribution of dividend under section 115 (g). Thus, if a corporation decided, for its own legitimate business purposes, to make adjustments in its capital structure, and did so in order to accomplish those purposes, it would be difficult to conclude that the transaction was also a distribution equivalent to a dividend undertaken for the benefit of its stockholders. See *Jacob Fischer*, 46 B. T. A. 999, 1011; *Alice H. Bazley*, 4 T. C. 897.

With this conception of the ultimate issue in mind, we proceed to a consideration of the question whether the transaction constituted, in reality, a recapitalization effected by the corporation for a legitimate business purpose.

The disposition of this question requires an examination of the purposes of the reorganization, as outlined by petitioner.

The first of these, designated as the "principal" purpose, was a belief that the existence of debenture bonds, available for use as collateral, would facilitate the refinancing of the corporation's mortgage indebtedness, then impending. Petitioner testified that he believed debenture bonds might be more acceptable than common stock if additional collateral were required in negotiating a new loan. The refinancing arrangements were successfully completed, but the record is completely silent as to whether the bonds were used in that connection. We may fairly assume, therefore, that they were not.

We are not impressed with the validity or the existence of this alleged purpose. It is difficult to see how debenture bonds of this nature, inferior to the mortgage lien itself, would have been as attractive to a mortgage bondholder of the corporation as common stock, which would at least have provided the creditor, already secured by a mortgage on the debtor's property, with some additional security in the form of a voice in the management of the corporation in event of default and pending forclosure.

The second reason for the reorganization, according to petitioner, was his desire to give some securities of the corporation to his two sons, who were associated with him in the business of the corporation, without surrendering any of his stock control over the company. He did give them bonds of a total face value of $48,000, representing about 16

percent of his holdings. This was obviously a personal reason having no connection with the corporate business.

The remaining two reasons may be considered together. They were the saving of corporate income tax resulting from the right to deduct interest paid on the bonds, and the saving of New Jersey franchise tax resulting from the decrease in the amount of stock. The total amount of the savings to the corporation was not computed, but it is apparent they are and will be substantial in each of the corporation's future tax years during the life of the bonds.

Respondent attacks these purposes as insufficient. It is true that the courts have held that where a recapitalization serves no legitimate corporate purpose, but is undertaken solely for the individual benefit of the stockholders, an exchange of securities made pursuant thereto is not excepted from taxation. See *Arthur S. Kleeman*, 35 B. T. A. 17; *Gregory* v. *Helvering*, 293 U. S. 465; *Royal Marcher*, 32 B T. A. 76; *Louis Wellhouse*, 3 T. C. 363. Where the sole purpose is to minimize the taxes of the corporation's stockholders this rule would be pertinent.

But this case may be sharply distinguished in the essential particular that here, the object sought was the minimizing of the taxes of the corporation itself. This situation can and must be distinguished from cases where the reorganization is designed for the individual benefit of the stockholders, without resulting benefit to the corporation. The purpose here was to so arrange the corporation's financial structure that its future tax liability would be reduced.

We have recognized as a legitimate corporate purpose the reduction of the corporation's liability for dividends on preferred stock. In *Annis Furs, Inc.*, 2 T. C. 1096, we considered the reduction of the corporation's periodic charge from $6\frac{1}{2}$ percent (the dividend on the preferred stock exchange for debenture bonds) to 6 percent (the interest in the bonds) as a sufficient financial advantage to the corporation to serve as a legitimate business purpose.

The reduction or elimination of other items of expense, by legal methods, is not essentially different. Any reduction of expense results in increased profits, and the primary purpose of all commercial corporations is the realization of profit.

We have already recognized that a reduction in the tax liability of a corporation may constitute a legitimate business purpose of a reorganization under the statute. *Clarence J. Schoo*, 47 B. T. A. 459. In that case two of the three reasons given for the recapitalization there in issue had to do with reductions in tax liability. Yet we said in part in our opinion:

There is nothing in the circumstances to invite the doctrine of *Gregory* v. *Helvering*, 293 U. S. 465. No transaction was impending which threatened a tax

on any of the participants. The recapitalization is not a sham or an artificial detour around a taxable event. There is nothing to indicate that a devious form of corporate maneuvering was masquerading as a recapitalization in order to avoid a tax which would have been assessed if the transaction had been permitted to take its direct course.

See also *C. A. Monroe*, 39 B. T. A. 685; *Tower* v. *Commissioner*, 148 Fed. (2d) 388.

There is no evidence, and no contention, that this exchange was not in fact made, that the old stock was not really canceled, or that the debenture bonds here do not represent a genuine indebtedness. The business of the corporation continued to be carried on. There is no element of unreality or sham apparent anywhere in the record. The facts of *Gregory* v. *Helvering, supra*, bear so little resemblance to the facts of this case that the rule there announced is inapplicable here. It can not be considered as authority for any rule that a corporation may not rearrange its capital structure, in exact accordance with the statute, in such a way as to secure *for itself in the future* whatever benefits it may be entitled to under the existing tax laws.

The case of *Crown Cork International Corporation*, 4 T. C. 19, is distinguishable on its facts. There it was held that a purported sale of securities by a parent corporation to a wholly owned subsidiary for the purpose of realizing a loss for tax purposes was, in reality, no sale, but a sham. The controlling fact in that case was that the "vendor" so controlled the "vendee" that there was, in reality, no such final disposition of the securities transferred as to justify a conclusion that there was a sale which would give rise to a tax loss. If there had been a final disposition of the securities transferred, e. g., a transfer to a corporation in no way controlled by the transferor, a sale would have been recognized for tax purposes even though the sole purpose of making the sale on the part of the transferor was to enable it to take a deduction on account of a loss.

We conclude that there was in this case a bona fide recapitalization of the corporation accomplished for its benefit and having a legitimate business purpose; that the transaction here in question was undertaken for the purpose of effecting that recapitalization; and that it was not undertaken for the purpose of effecting the distribution of a dividend to the stockholders of the corporation.

Therefore, and upon a consideration of all of the facts disclosed by the record, we are of the opinion that respondent erred in his determination that the issuance of debenture bonds to petitioner constituted a taxable dividend.

*Decision will be entered under Rule 50.*