## BANK OF DE SOTO v. T. S. REED ET AL.

### Decided April 3, 1908.

**1.—Corporation de jure and de facto.**

Performance of all the prerequisites prescribed by the statute, except actually filing the charter with the Secretary of State, is not sufficient to bring a company or association of men into existence as a corporation *de jure* or *de facto.* The filing of the charter is a *sine qua non.*

**2.—Same.**

When all the statutory prerequisites have been complied with, and the purposes and objects are those for which a corporation may be formed, the association becomes a corporation *de jure.* The failure to comply with one or more of the prerequisites makes it a corporation *de facto.*

**3.—Corporation—Subscription to Stock.**

A number of persons agreed to form a corporation; a charter was prepared and sent to the Secretary of State to be filed; the charter was returned for correction; a new charter was prepared, but, through the negligence of the party entrusted with the duty, it was not sent to the Secretary of State until about three months afterwards; at the first meeting directors and officers were elected and subscriptions to stock fully paid in; before the charter was actually filed with and granted by the Secretary of State the subscriptions for stock were expended for expenses and upon obligations incurred prior to the filing of the charter, so that when the charter was granted the corporation was without assets. Held, the stockholders were liable to the face value of their stock for debts incurred after the charter was granted. The previous payment for their stock did not discharge their liability.

**4.—Same—Liability of Stockholders.**

Amounts unpaid on the stock of an insolvent corporation constitute a trust fund for the benefit of creditors, and where the insolvency and non-payment of subscriptions are undisputed a creditor may sue the stockholders directly.

**5.—Inchoate Corporation—Liability of Members.**

Until a corporation is legally organized the associated individual members will, as to third persons, be liable as partners for all debts contracted on behalf of the aggregated body with their consent, express or implied.

**6.—Same.**

Where it appears that part of the money paid by an individual as subscription to stock in an intended corporation is on hand, and in the possession of the corporation when it is legally created, such individual should have credit on his liability as stockholder for the money on hand.

**7.—Conversion—Liability of Directors.**

An appropriation of property paid by subscribers for stock into a corporation to the payment of debts incurred before the filing of the charter, would be conversion of corporate property, for which the directors authorizing the same would be responsible to creditors of the corporation.

Appeal from the County Court of Jefferson County. Tried below before Hon. Jas. A. Harrison.

*Crook, Da Ponte & Lawhon,* for appellant.—The Beaumont-Port Arthur Company was not a corporation, de facto or de jure, until the filing of its charter in the office of the Secretary of State, and its existence as such could be collaterally attacked. Rev. Stats., arts. 645 and 646; Allen v. Long, 80 Texas, 261; American Salt Co. v. Heidenheimer, 80 Texas, 344; Bolton v. Prather, 35 Texas Civ. App., 295; 10 Cyc., pp. 223, 227, 228, sec. E.

Where subscribers to stock in a corporation do not pay in their subscriptions and the company becomes insolvent, such subscribers are liable to creditors, jointly and severally, for the par value of the stock subscribed for by them to the extent that their subscriptions are necessary to pay the debts of the corporation. Mathis v. Pridham, 1 Texas Civ. App., 58; Sanger v. Upton, 91 U. S., 56, 23 L. ed., 220; National Bank of Jefferson v. Texas Investment Co., 74 Texas, 421.

*Smith, Crawford & Sonfield,* for appellees.—The appellees having agreed to form a corporation, executed a charter, subscribed and paid in to the capital stock, elected directors and officers of the company, entered upon the business of the corporation as expressed in the charter, the company holding itself out to the world as a corporation, was a corporation de facto notwithstanding the failure to file the charter with the Secretary of State. If not a de facto corporation as to third persons, and if appellees were liable individually for debts incurred prior to such filing, yet, as between themselves, they were not partners, but stockholders of a corporation de facto. Snider v. Troy, 24 Am. St. Rep., 889; Miller v. Newburg Coal Co., 13 Am. St. Rep., 907; Cook on Corp., sec. 234; Heald v. Owen, 79 Ia., 23, quoted in 1 Thompson on Corp., foot-note 3, p. 368; Bolton v. Prather, 35 Texas Civ. App., 295.

Appellees can not be held liable on their subscription to the capital stock of the Beaumont-Port Arthur Company, because the undisputed evidence shows that they paid to the treasurer of the corporation, prior to the filing of the charter, the par value of the stock subscribed for by them, respectively, in cash, except appellee Robinson, who paid in services rendered the corporation. Rev. Stats., art. 642, sec. 56.

Upon the filing of the charter of the Beaumont-Port Arthur Company, the corporation adopted the contracts and engagements entered into prior to the said filing, and the corporation through its directors had the right to expend corporate funds in the payment of obligations incurred in the acquisition of the property and assets taken over by the corporation. Jones v. Smith, 87 S. W., 210; Andres v. Morgan, 78 Am. St. Rep., 713; Whitney v. Wyman, 101 U. S., 392, 25 L. ed., 1050; Ennis Cotton Co. v. Burks, 39 S. W., 966; Lancaster, etc., v. Murray, 19 Texas Civ. App., 110.

McMEANS, ASSOCIATE JUSTICE.—Appellant, Bank of De Soto,

sued the Beaumont-Port Arthur Company and T. S. Reed, W. S. Davidson, John L. Keith, C. T. Heisig, A. L. Williams, George W. Carroll, I. D. Polk, T. A. Robinson, S. H. Van Wormer and D. Woodhead, to recover a balance due on two drafts dated December 16 and December 19, 1904, drawn by W. C. Willis on the Beaumont-Port Arthur Company, and secured by a lien on cotton, bought with the proceeds of the drafts by Willis as agent of said company. The drafts were not paid on presentation and were protested, and the cotton was sold and the proceeds applied to the payment of the drafts, leaving a balance due, including $10 protest fees, of $485.77.

Appellant alleged that the defendants were partners doing business under the name of "Beaumont-Port Arthur Company," and that Willis was their agent in drawing the drafts. Appellant pleaded in the alternative that if the appellees were not partners, then that on or about September 9, 1904, the appellees agreed to organize a corporation to be known as "Beaumont-Port Arthur Company," with a capital stock of $5000, divided into fifty shares of- the par value of $100 each, to which the appellees subscribed various amounts set out in the petition. It was averred, however, that the charter of the intended corporation, through the negligence of D. Woodhead, secretary, was not filed in the office of the Secretary of State until December 6, 1904, and in the meantime all of the money subscribed and paid into the company had been lost while the defendants were doing business as partners. That on December 6, when the charter was filed, the Beaumont-Port Arthur Company was insolvent, and no further sums of money were paid in, so that the corporation started business with no assets whatever, and was in that condition on December 16 and 19, when it incurred its obligations to appellant. Appellant therefore prayed judgment against the defendants on their stock subscriptions.

It was further alleged in the alternative, that if the money paid into the business of the Beaumont-Port Arthur Company, and which was lost and paid out before the filing of the charter for debts and obligations incurred while the defendants were doing business as partners, should be credited as payments upon their stock subscriptions, then the defendants, who were the directors and in charge of the business of the concern, were liable to appellant in damages for having paid out the funds of the corporation for debts and obligations for which they were liable as partners individually, and for which the corporation was not responsible, thus rendering it insolvent. The amount alleged to have been so paid out was much greater than appellant's debt.

The defendants, except Woodhead, answered and denied the partnership under oath, and alleged that Willis was not their agent, but the agent of the Beaumont-Port Arthur Company.

The defendants further averred that on or about September 9, they agreed to form a corporation under the name of Beaumont-Port Arthur Company, and caused a charter to be prepared, which was sent to the Secretary of State, who returned it for correction of a defect therein, and thereupon another charter was prepared, but

was not filed through the negligence of the secretary, Woodhead, until December 6, 1904. That they believed the charter had been filed and the Beaumont-Port Arthur Company duly incorporated, and as soon as they discovered it had not been they immediately filed the same. That immediately upon executing the charter on September 9, the board of directors named therein met, elected officers and entered upon the business named in the charter. That each of the defendants paid into the company the full par value of the stock subscribed for by him on or about September 9, 1904, except Robinson and Woodhead, who were to pay for their stock in services, and that the Beaumont-Port Arthur Company was a *de facto* corporation, and all of the transactions had prior to December 6, 1904, were in behalf of the corporation, and after the filing of the charter the company adopted and ratified said transactions, all of which was done before the drafts sued on were executed.

The cause was tried before the court on an agreed statement of facts March 12, 1907, and resulted in a judgment against Woodhead by default, and against the Beaumont-Port Arthur Company, the corporation, for the amount sued for, and in favor of all the other defendants, to which appellant excepted and gave notice of appeal, and has brought the cause to this court for revision.

From the agreed statement of facts we take the following:

"Sometime shortly prior to the 9th day of September, 1904, the defendants associated themselves together for the purpose of forming a corporation under the name of Beaumont-Port Arthur Company. That to this end a charter was prepared, executed and forwarded for filing to the Secretary of State of the State of Texas; that the Secretary of State returned said charter for the correction of a defect in the statement of the purpose for which said corporation was formed. That thereupon the said parties caused to be prepared the instrument hereto attached and marked Exhibit "A" and duly subscribed and executed the same on the 9th day of September, 1904. That the defendants, including those named as directors in said instrument, intended and understood that this instrument should be immediately filed in the office of the Secretary of State, but that through the negligence or oversight of defendant, D. Woodhead, whose duty it was as secretary, the said charter was not in fact returned to the Secretary of State until the 6th day of December, 1904, when said instrument was filed in the Office of the Secretary of State and a certified copy thereof returned to Beaumont-Port Arthur Company by said officer.

"That the defendants believed said charter had in fact been filed immediately after its execution and believed said Beaumont-Port Arthur Company was duly incorporated and the said charter was forwarded to the Secretary of State as soon as the defendants learned of the failure of defendant Woodhead to so forward same. That immediately after the execution of said charter on the 9th day of September, 1904, the Board of Directors named in the charter met, officers were elected, the business as expressed in the purpose clause of the charter was entered upon and was conducted in the same manner as though the company was a corporation, and the company

held itself out to the world as a corporation. That after the filing of the charter on December 6, 1904, the business was continued under the management of the same directors and officers, who as directors of said corporation continued in possession and control of the property and assets of the said Beaumont-Port Arthur Company.

"That defendants, about September 9, 1904, subscribed for shares of the capital stock of the proposed corporation, those subscribed for by defendants Robinson and Woodhead being payable in services to be thereafter rendered.

"That fifty percent of the authorized capital stock of said corporation was *bona fide* subscribed and ten percent thereof paid in, as required by statute, on or about the 9th day of September, 1904, and each of the defendants paid in cash to the treasurer of the company the par value of the stock subscribed for by him, except the defendants Robinson and Woodhead, who were to pay their stock in services to be rendered.

"That on the 16th and 19th days of December, 1904, and subsequent to the filing of the charter in the office of the Secretary of State, one W. C. Willis was duly authorized agent of the Beaumont-Port Arthur Company, and being duly authorized thereunto purchased cotton from various parties in the State of Louisiana, shipped same to Beaumont, took the bill of lading from the railroad company to the order of the shipper, "notify Beaumont-Port Arthur Company." That to these bills of lading he attached drafts on the Beaumont-Port Arthur Company, payable to the order of plaintiff and signed by himself, which drafts he delivered to plaintiff, who cashed the same and allowed an advance to the said Willis as agent of Beaumont-Port Arthur Company. The two drafts aggregated the sum of $2,279.08.

"That said drafts were secured by a lien on the cotton for the purchase of which the sums advanced by the bank to Willis had been used. That both of said drafts were executed and delivered by said Willis as the duly authorized agent of the Beaumont-Port Arthur Company, and that plaintiff advanced and loaned the Beaumont-Port Arthur Company the amounts therein stated. That the plaintiff is still the legal owner and holder of both of said drafts and that the same are past due and unpaid, but entitled to credits as hereinafter shown.

"That said drafts were presented to the Beaumont-Port Arthur Company and it refused to pay the same, whereupon the American National Bank, who had said drafts for collection, caused same to be protested. Protest fees were $10, which was reasonable and which amount has been paid.

"That after the presentation and refusal by the Beaumont-Port Arthur Company to pay said drafts, plaintiff at once sold the sixty bales of cotton, for which it had bills of lading, for $2,070.82, which was the market value of said cotton at the time. From this amount plaintiff deducted freight and storage charges, expenses and commissions for making said sale, leaving a balance due, including notary's fee, of $485.77.

"That the defendants did not pay into the Beaumont-Port Arthur Company any money or thing of value whatever at the time of the filing of the charter on the 6th day of December, 1904, nor at any time subsequent thereto, except in settlement of debts accruing prior to said date.

"That the said Beaumont-Port Arthur Company, deeming that the business could not be carried on with profit, discontinued business altogether about the time plaintiff's drafts sued on were dishonored, and that it has not done any business since then. That at the time this suit was filed there were no assets belonging to said Beaumont-Port Arthur Company out of which to pay the balance due on the drafts herein sued on.

"That the cash paid in on or about September 9, 1904, in the way of subscription to its stock, had been expended for expenses and upon obligations incurred prior to the filing of the charter of said company on the 6th day of December, 1904, and none of the said money was used except in the regular course of the business of said company.

"That the plaintiff in dealing with the Beaumont-Port Arthur Company did not know whether said company was a corporation, partnership or joint stock association. .

"That all of the defendants actively participated in the business of the Beaumont-Port Arthur Company prior and subsequent to the filing of said charter."

By its first assignment appellant complains that the court erred in rendering judgment in favor of appellees for the reason that at the time of the filing of the articles of incorporation of the Beaumont-Port Arthur Company no money or other assets were contributed by any of said defendants to the capital stock of the corporation, but that on the contrary, it appears from the undisputed proof that said defendants, being subscribers to the capital stock of the corporation, had paid nothing into the corporation on their subscriptions; that from the time said corporation started to do business and up to the time of the filing of this suit it was and is wholly insolvent and possessed no property out of which plaintiff's debt could be made, and that therefore said defendants as such subscribers are liable to the extent that their subscriptions are necessary to pay appellant's debt. By its proposition under this assignment appellant contends that the Beaumont-Port Arthur Company was not a corporation *de facto* or *de jure* until the filing of its charter in the office of the Secretary of State. To meet this contention, appellees urge that they, having agreed to form a corporation, executed a charter, subscribed to the capital stock and paid in the amount of their subscription, elected directors and officers of the company and entered upon the business of the corporation as expressed in the charter, the company holding itself out to the world as a corporation, it was a corporation *de facto,* notwithstanding the failure to file the charter with the Secretary of State.

The first question presented for our determination is, was the Beaumont-Port Arthur Company a *de facto* corporation prior to the filing of its articles of incorporation with the Secretary of State

on December 6, 1904? If it was, then the payment by appellees of their stock subscription, even if the amounts so paid were expended or lost in the business for which the corporation was formed, prior to the filing of the charter, would exempt them from liability to a creditor of the corporation upon their stock subscription. American Salt Co. v. Heidenheimer, 80 Texas, 344.

Article 641, Revised Statutes, provides: "Private corporations may be created by the voluntary association of three or more persons . . . in the manner hereinafter mentioned." Article 643 provides what the charter must set forth, and the next succeeding article relates to the manner of its execution. Article 645 provides that: "Such charter shall thereupon be filed in the office of the Secretary of State . . . ," and article 646: "The existence of the corporation shall date from the filing of the charter in the office of the Secretary of State . . . ." Here we have a specific declaration of the statute as to what acts are necessary to bring, and the date when the corporation is brought into existence. Performance of all the prerequisites short of filing the charter with the Secretary of State is not sufficient to bring the company into existence as a corporation *de jure.*

Are such acts sufficient to create the association a corporation *de facto?* We think not. Where the governing statute points out the manner in which the corporation shall be organized, and the statute is followed, the corporation is brought into existence so that it may enter upon the objects of its creation. Thus the corporation is generally deemed to exist from the time when the certificate of incorporation prescribed by the governing statute is filed in accordance with the statute. (10 Cyc., 223.) In several jurisdictions it has been held that a compliance with the requirement that the charter shall be filed in the office of the Secretary of State, is a condition precedent to the establishment of a corporation *de jure;* and without such compliance the association can not be treated as a corporation *de facto.* Salt Co. v, Heidenheimer, *supra.* When the articles of incorporation have been filed in the office of the Secretary .of State then the association becomes a corporation. National Bank of Jefferson v. Texas Investment Co., 74 Texas, 435. Whether after such filing the corporation is one *de facto* or *de jure,* depends upon the compliance or not by the incorporators with all the conditions prescribed by law essential to give life and vitality to the association as a corporation. If all the prerequisites have been complied with, and the purposes and objects are those for which the corporation may be formed, then it becomes a corporation *de jure,* and while the filing of the charter makes it a corporation, the failure to comply with some one or more of the prerequisites makes it a corporation *de facto;* but the filing of the charter is essential to the creation of the corporation as either the one or the other. (10 Cyc., 658; Bergeron v. Hobbs, 65 Am. St. Rep., 85.)

It follows therefore that the Beaumont-Port Arthur Company was neither a *de facto* nor *de jure* corporation until it filed its articles with the Secretary of State, and this was not done until December 6, 1904. It is true that the stockholders intended to file the charter,

and when they were engaged in carrying out the purposes for which the corporation was formed they believed the charter had been filed, but their intention and belief could not have the effect of bringing the corporation into existence in view of a positive statute that nothing less than the filing would accomplish this result. It is further true that they directed one of their number to cause the charter to be filed and that they did not know that he had failed to carry out their direction, but he was their agent for the purpose and must have known that the charter had not been filed, and his knowledge must be imputed to them. The evidence shows that on September 9, 1904, the appellees, together with one Woodhead, agreed to form the corporation, and to this end caused a charter to be prepared and sent for filing to the Secretary of State, who returned it for correction of a defect; that thereupon another charter was prepared, but through the negligence of Woodhead, who had been selected as secretary, it was not filed until December 6, 1904; that at the time of executing the first charter, on September 9, 1904, the board of directors named therein met, elected officers and entered upon the business named in the charter. Each of them at that time paid into the company the full par value of the stock subscribed by him, except Robinson and Woodhead, who were to pay in services. The company in carrying on the business incurred liabilities, so that on December 6, when the charter was filed and the association became a corporation the cash that theretofore, on or about September 9, 1904, had been paid in had been expended for expenses and upon obligations incurred prior to the filing of the charter, and the appellees never did pay into the corporation any money or thing of value whatever. Nevertheless the corporation at once entered upon the business for which it was formed, and in a few days after its incorporation incurred the liability sued upon in this case. Thus we are presented with a case where subscriptions to the capital stock of a proposed corporation have been paid and the funds thus derived expended in an adventure of the subscribers before the corporation was created, so that, when the corporation came into existence, no money or thing of value was paid into it, and the subscribers have never discharged their obligations to take the stock subscribed for by them and pay to the corporation the amount of their respective subscriptions. Thus the corporation was insolvent from the beginning of its existence. It is now too well settled to require discussion that the amount unpaid on the stock of an insolvent corporation constitutes a trust fund for the benefit of creditors, and that where the insolvency and non-payment of subscriptions are undisputed, as in this case, the creditor may sue the stockholders in a direct proceeding without first obtaining a judgment against the corporation and the return *nulla bona* of execution. Mathis v. Pridham, 20 S. W., 1015.

It is a general principle that until a corporation is legally organized the co-adventurers will, as to third persons, be liable as partners for all debts contracted on behalf of the aggregated body, with their consent, express or implied. 10 Cyc., 657; Bergeron v. Hobbs, *supra.* When the appellees, before the filing of the charter, entered

upon the business for which the corporation was sought to be formed, they became liable as partners for their acts and contracts, and payment by them of liabilities so contracted by them, whether such payment was made before or after the filing of the charter, can not be regarded as payment upon their stock subscriptions. It follows from what we have said that the court erred in rendering judgment in favor of appellees.

The other assignments present no reversible error and are overruled.

As the evidence does not show that all of the appellees are solvent, we can not render such judgment here as should have been rendered by the court below, but we affirm the judgment of the lower court as to the Beaumont-Port Arthur Company and D. Woodhead, and reverse the judgment and remand the cause as to the appellees with instructions to the County Court to hear proof and render judgment against the solvent appellees, subscribers to the stock of said corporation, in such an amount as shall be necessary to pay the appellant's debt, interest and cost of suit.

## ON REHEARING.

Appellees, in their motion for rehearing, have called our attention to the clause in the agreed statement of facts stating that at the time of the filing of the charter those who had prior to that time acted as directors of the corporation continued in possession and control of the property and assets of the Beaumont-Port Arthur Company, and contend that inasmuch as it is thus shown that the company did come into the possession of assets and property, the amount and value of which is not shown, the subscribers to the capital stock of the corporation are entitled on another trial to have the value of such property, when ascertained, credited upon their stock subscriptions. This contention, we think, is correct. The motion for rehearing will be granted to the extent of modifying our former opinion that it shall read as follows:

The judgment of the court below as to the Beaumont-Port Arthur Company and D. Woodhead is affirmed, but as to the appellees said judgment is reversed and remanded with instructions to the County Court to hear proof and ascertain the value of the assets paid by the subscribers to the corporation after the filing of the charter and to allow the subscribers credit upon their stock-subscriptions therefor; and if it be found that such property was not, at the time it was so paid to the corporation, of value sufficient to pay the par value of the stock subscribed for by them, then to render judgment against the solvent subscribers, and in favor of the Bank of De Soto, for the difference between the value of the property so paid into the corporation and the par value of the stock subscribed for, not to exceed an amount necesary to pay appellant's debt, interest and costs of suit. In ascertaining the value of such property, however, the court should take into consideration encumbrances thereon at the time it was paid into the corporation, if any, and allow as credit upon the stock subscriptions the difference between the value and the

amount of the incumbrance. In all other respects the appellees'
motion for rehearing is refused.

It may be well to say, however, that any appropriation of the prop-
erty paid by the subscribers into the corporation to pay debts in-
curred before the filing of the charter would be a conversion of cor-
porate property for which the directors so directing its use would be
liable at the suit of the creditor of the corporation.

*Affirmed in part and reversed in part.*