CAMP WOLTERS LAND COMPANY, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 4709.   Promulgated June 28, 1945.

*R. B. Cannon, Esq.,* for the petitioner.
*Homer J. Fisher, Esq.,* for the respondent.

338

342

**OPINION.**

DISNEY, *Judge*: We consider first the question: When did petitioner, a Texas corporation, come into existence as a separate taxable entity? Petitioner contends that it came into existence as a separate taxable entity not later than March 16, 1941. It points out that its artcles

of incorporation were duly executed on March 16, 1941; that $4t.500 out of a total of $60,000 subscribed was paid in for its capital stock before February 15, 1941; that it had borrowed money and commenced the active operation of business not later than March 16, 1941. Nevertheless, petitioner's contention must be rejected. Article 1313, Vernon's Annotated Texas Statutes, as amended by Acts 1929, 41 Leg., p. 530, ch. 255, sec. 1, provides in part as follows: "The existence of the corporation shall date from the filing of the charter in the office of the Secretary of State." The Court of Civil Appeals of Texas in an early decision, *Bank of De Soto* v. *Reed*, 50 Tex. Civ. App. 102; 109 S. W. 256, 259 (1908), stated that, "When the articles of incorporation have been filed in the office of the Secretary of State, then the association becomes a corporation * * * and. while the filing of the charter makes it a corporation, the failure to comply with some one or more of the prerequisites makes it a corporation de facto, *but the filing of the charter is essential to the creation of the corporation as either the one [de jure] or the other [de facto]*. [Citations]." (Parenthetical material and italics supplied.) This rule of law had been set forth in an earlier opinion, *Weatherford, M. W. & N. W. Ry. Co.* v. *Granger*, 86 Tex. 350; 24 S. W. 795, 796, and was adopted by the Supreme Court of Texas in the more recent case of *Payne* v. *Bracken*, 131 Tex. 394; 115 S. W. (2d) 903 (1938).

The Supreme Court has said that "Congress cannot convert into a corporation an organization which by the law of its state is deemed to be a partnership," *Burk-Waggoner Oil Assn.* v. *Hopkins*, 269 U. S. 110, and no more have the courts the power to give life to a corporation prior to the date its existence begins under the laws of the state of its origin. Under the law of Texas the incorporators prior to the date of the coming into existence of the corporation are liable as partners. *Smith* v. *First Nat. Bank*, 43 Tex. Civ. App. 495; 95 S. W. 1111; *Bank of De Soto* v. *Reed, supra; William Cameron & Co.* v. *Trueheart*, 165 S. W. 58.

In *Weatherford, M. W. & N. W. Ry. Co.* v. *Granger, supra*, it is stated:

* * * A promoter, though he purport to act on behalf of the projected corporation, and not for himself, cannot be treated as agent, because the nominal principal is not then in existence; and hence, where there is nothing more than a contract by a promoter, in which he undertakes to bind the future corporation, it is generally conceded that it cannot be enforced. * * * The promoters themselves are liable upon the contract, unless the person with whom they engage agrees to look to some other fund for payment. * * * It is also generally held that contracts by promoters, made on behalf of the corporation within the scope of its general authority, may be adopted by the latter after its organization. Some of the courts say they may be ratified, but ratification presupposes a principal existing at the time of the agent's action, and it seems to us, therefore, that the term is not applicable in its technical sense. * * * A

contract made by promoters may be adopted by a corporation expressly or impliedly by exercising rights under it; but otherwise it is not binding upon such corporations. * * *

Again, in *Byerly* v. *Camey*, 161 S. W. (2d) 1105, 1110, it is stated;

* * * The promoters are not regarded as agents of the corporation later to be formed, nor are their contracts binding upon the corporation, unless made so by charter or statute, or unless assumed by the corporation. 18 C. J. S. Corporations, § 120, p. 522; *Weatherford, M. W. & N. W. Ry. Co.* v. *Granger*, 86 Tex. 350, 24 S. W. 795 * * *

It is stated in 18 C. J. S. § 122 b, p. 525:

While it is often said, and has sometimes been held, that a corporation may ratify contracts made by its promoters before incorporation, by the great weight of authority the act of the corporation in adopting contracts entered into by promoters is not a ratification of such contracts in the proper sense, as the term is used in the law of agency, since the promoters could not be its agents prior to its creation, but it is in legal effect a novation or the *making of a contract by the corporation as of the date of the adoption.* * * * [Italics supplied.]

No reliance is placed upon any contention that section 3797 (a) (3) of the code, providing that the term "corporation" includes associations, has any application to the instant case. It is to be noted also that even if there was, prior to April 25, 1941, some association taxable as a corporation, it would not be the same taxable entity as the petitioner here. In *West Point Marion Coal Co.*, 19 B. T. A. 945, we considered a situation where a corporation was formed in December 1921 to take over the business of an association operating under a Massachusetts deed of trust, one of the three members of which association died in August 1921. The corporation continued the business effective January 1, 1922, and sought in 1922 to deduct the net loss sustained in 1921 by the association. The stockholders of the corporation, including the estate of the associate who died in 1921, were the same and held the stock in the same proportion as the shareholders of the association had held its shares. We held that the corporation was a taxable entity separate and distinct from its predecessor and was not entitled to the deduction, saying that the corporation sustained no net loss in the year 1921. We hold that petitioner became a corporation on April 25, 1941, when its charter was filed with, and approved by, the Secretary of State of Texas.[6] It follows that petitioner came into existence as a separate taxable entity on April 25, 1941, unless some superseding rule of law requires us to determine upon a later date. Cf. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435.

Respondent contends that petitioner did not become a separate taxable entity until May 8, 1941. We do not think that respondent's contention that petitioner did not become a taxable entity until May 8,

---

[6] Cf. *In re Johnson-Hart Co.* (Dist. Ct. Minn.), 34 Fed. (2d) 183.

1941, should be sustained either because petitioner stated in both its 1941 and 1942 tax returns that its date of incorporation was May 8, 1941, or because the lease from petitioner to the city was executed on behalf of the former on May 8, 1941. Respondent agrees that the general rule is that the date of the 'granting of the charter by the Secretary of State of Texas is the beginning date of the existence of a corporation for Federal income tax liability of the corporation. See *Board of Trade Bldg.* v. *United States,* 1 Fed. Supp. 862; *Athol Mfg. Co.,* 22 B. T. A. 105; affd., 54 Fed. (2d) 230. He contends, however, that there is an exception to this rule where the corporation was not organized until some time after the granting of the charter. The evidence on the question of fact involved in this respect is sleazy,[7] and any deficiency therein must be resolved against petitioner, whose burden it is to overcome the presumption of correctness which attaches to respondent's determination. Therefore, we have found *as a fact* that petitioner's organization was not completed in detail until May 8, 1941. However, we are of the opinion it does not follow, *as a matter of law,* that petitioner's existence as a taxable entity did not begin until May 8, 1941. Respondent cites in support of his contention one case only, *Florida Grocery Co.,* 1 B. T. A. 412. In that case the principal stockholder of a Georgia corporation and two of its employees determined to organize a corporation under the laws of Florida. It was agreed that the interested parties would be these three individuals and the Georgia corporation, and that the business would be conducted under the name of the Florida Grocery Co. Business was begun under that name about October 1, 1916. Florida Grocery Co. was chartered on April 17, 1917, and it held its organization meeting, elected officers, and issued its certificates of stock on May 28, 1917. Also on May 28, 1917, a bill of sale was executed by the interested parties "as copartners doing business under the firm name and style of the Florida Grocery Co.," by which all of the assets of the alleged partnership were transferred to the taxpayer, and the latter continued business from that date. The Commissioner held that the Florida Grocery Co. was an association within the provisions of section 10 (a) of the Revenue Act of 1917, from January 1 to April 17, 1917, and that the taxpayer was taxable as a corporation for the entire year 1917. The Board of Tax Appeals

---

[7] One of the petitioner's directors testified as follows in response to a question requesting him to explain why the lease from petitioner to the city was not acknowledged until May 8, 1941:

"A *Well, I presume at that time the organization of the land company was complete,* I suppose it was then that we received the charter; we had made an application for a charter before that time and we had all signed up for it, and our attorney was handling that part of it.

"I just assume that that was the date that we got our charter.

"Q But the signatures were not acknowledged until May 8th.

"A I don't know about that, I don't recall exactly the circumstances about that, but I do know that the agreement was made back in January with reference to the lease."
[Italics supplied.]

held that from January 1 to *May 28, 1917*, the Florida Grocery Co. was a joint venture and should be taxed as a corporation from *May 28, 1917*. From the finding that the Florida Grocery Co. was a joint venture and not a corporation for that part of 1917 prior to the acquisition by the Florida Grocery Co. (the corporation) of the assets of its predecessor, it followed that the Florida Grocery Co. could not be taxed as a corporation for the entire calendar year 1917. It thus became immaterial whether the existence of the Florida Grocery Co. (the corporation) as a separate taxable entity began on April 17 or May 28, 1917, because it acquired no assets and had no income until May 28, 1917. The joint venture continued to function until May 28, 1917, and the tax liability of the Florida Grocery Co. as a corporation would be the same for 1917 whether it was taxed as such from April 17, 1917, or from May 28, 1917. Therefore, we do not regard the case of *Florida Grocery Co.*, *supra*, as authority for the proposition that where a corporation, as in the instant case, is chartered on April 25, 1941, and is itself engaged in business and has income from that date, but the details of whose organization are not completed until May 8, 1941, the existence of that corporation as a taxable entity does not begin until May 8, 1941. We are of the opinion that the better view is that under the circumstances present in the instant case petitioner's existence as a taxable entity began on April 25, 1941. This view alone is in accord with the sound administration of section 711 (a) (3) (A) of the code, providing for the annualization of excess profits net income where petitioner's taxable year is a period of less than 12 months.[8] No consideration was given to this last factor in the *Florida Grocery Co.* case, *supra*, and that affords another ground for distinction between that case and this. In *Kamin Chevrolet Co.*, 3 T. C. 1076, in applying section 711 (a) (3) (A), we held that a *de facto* dissolution was effective to measure the number of days in petitioner's short taxable year. So, we are here of the opinion that the beginning of petitioner's existence as a *de facto* corporation on April 25, 1941, determines the beginning of its existence as a taxable entity for the purpose of the income and excess profits tax. Nothing in the law of Texas is inconsistent with this conclusion. *Bank of De Soto* v. *Reed*, 50 Tex. Civ. App. 102; 109 S. W. 256, 259; *Roaring Springs Townsite Co.* v. *Paducah Co.* (Texas), 164 S. W. 50. Not only does the respondent, as above seen, agree that the general rule is that the date of filing of a charter is the date of inception of a corporation, but the rule is followed in S. M. 3136, C. B. IV-1, p. 205, quoting and construing the Texas statute above referred to and holding that a Texas corporation had corporate existence from the date of record of its charter with the Secretary of State of Texas.

---

[8] See *General Antline & Film Corporation*, 3 T. C. 1070.

Therefore, we hold that petitioner shall be considered as having come into existence as a separate taxable entity on April 25, 1941, and that such date shall be used for the purpose of determining whether petitioner is liable for an excess profits tax for 1941.

The petitioner raises the question, on brief, whether lease rentals for the period March 1 to April 25, 1941, when petitioner's charter was approved, are properly includible in petitioner's income for 1941. This issue was not raised by the pleadings. It was raised by petitioner (in the alternative, in case we should hold that the petitioner's corporate existence did not begin on March 16, 1941) and was suggested for the first time on brief. This Court, therefore, will not disturb the Commissioner's determination in this respect. *Louis Wellhouse, Jr.*, 3 T. C. 363, 371, and cases cited therein. Though the petitioner also contends in the alternative that the rentals constitute an asset of the incorporators contributing to the petitioner's capital, and did not come to the petitioner as its own income, no facts appear to show that stock was issued for the amount of rentals. We accordingly hold that the lease rentals received by petitioner for the period March 1 to April 25, 1941, are includible in petitioner's income for 1941.

Our next question is whether petitioner is entitled to deduct from its gross income for 1941 any amount as a result of the transaction by which the promoters purchased in March 1941 the improvements on the Deakins, Maddux, and Sullivan tracts, which improvements were sold and removed in April 1941. The burden on this issue is upon petitioner to establish that *it* sustained a loss or a deductible expense as a result of this transaction. In its 1941 tax return petitioner claimed it sustained a loss of $8,250 "from the sale or exchange of property other than capital assets." However, on brief, it has abandoned that contention and now urges that, "The net cost to petitioner, viz., $6,650.00,[9] of acquiring and demolishing the three said residences constitute either: (a) An expense of obtaining a tenant under a one-year lease, deductible in full from 1941 income; or (b) an expenditure amortizable over the life of the original lease and any reasonably foreseeable renewals thereof, which together did not exceed a period of five years." Petitioner, to sustain its contentions on this issue, must establish that it acquired, sold, and removed the improvements after it came into existence, that is, after April 25, 1941. It has failed to so establish. The only evidence is that the improvements were acquired in March and sold and removed in April 1941. Plainly then, all this may have transpired before April 25, the inception of petitioner's existence. We must and do conclude, therefore, that petitioner has not shown that it received the improvements as part payment for the subscription of its shares or otherwise, because the im-

---

The $1,600 difference is made up of $1,600 received by petitioner from the Government

provements may have been sold and removed by the promoters prior to April 25, 1941. When petitioner executed the lease of the five tracts of land (Brock, Lamkin, Keener, Johnson and Watson, and Windham), the transaction by which the improvements on the Deakins, Maddux, and Sullivan tracts had been purchased, sold, and removed may have been completed in all its phases by the promoters and not by the petitioner, and petitioner could not have sustained a deductible expense.

We hold, therefore, that petitioner is not shown to be entitled to deduction from its gross income for 1941 on account of the transactions by which the improvements on the Deakins, Maddux, and Sullivan tracts were purchased, sold, and removed, and that the Commissioner did not err in disallowing the deduction of $8,250 claimed by petitioner in its 1941 return.

In his deficiency notice the Commissioner allowed petitioner a deduction from its gross income for 1941 in the amount of $359.32, under section 23 (q) of the Internal Revenue Code, holding that the net cost of the transaction by which the improvements on the Deakins, Maddux, and Sullivan tracts were purchased, sold, and removed, constituted a gift to the United States Government. In his amended answer, however, respondent alleged that no deduction was allowable. We note that section 23 (q) of the code, as amended by section 224 (b) and section 229 of the Revenue Act of 1939, even if otherwise applicable, could not result in an allowable deduction to petitioner and that the conclusion reached in the preceding paragraph is not to be altered, because the Internal Revenue Code did not provide for the allowance of a deduction for gifts by a corporation to the United States Government until section 23 (q) was amended by section 125 of the Revenue Act of 1942, which is applicable only with respect to taxable years beginning after December 31, 1941.

In his deficiency notice the Commissioner eliminated from petitioner's gross income the $1,600 paid by the United States Government. He now asserts in his amended answer that, if he erred in disallowing the $8,250 deduction claimed by petitioner, then the $1,600 should be restored to income for 1941. The Commissioner also asserts in his amended answer that if the $8,250 or the $9,250 (the gross cost of the Deakins, Maddux, and Sullivan tracts) is deductible by petitioner in 1941, then the $1,000 received upon the sale of the improvements should be added to petitioner's income for 1941. Having found that the Commissioner did not err in disallowing the deduction of $8,250 claimed by petitioner on its 1941 return, we have no occasion to consider these alternative contentions of respondent. Therefore, we hold that neither the $1,600 nor the $1,000 is includible in petitioner's income for 1941.

Our next question is whether and in what amounts petitioner is entitled to an allowance for depreciation in 1941 and 1942 on the buildings and improvements on the following tracts: Windham, Lamkin, Johnson and Watson, and Brock. Section 23 (1) of the code, as amended by section 121 of the Revenue Act of 1942, provides as follows:

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(1) DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business, or

(2) of property held for the production of income. \* \* \*

However, even assuming that petitioner is in all respects otherwise entitled to an allowance for depreciation on these buildings and improvements for the taxable periods here involved, nevertheless such an allowance can not be permitted in the absence of proof of the cost of these improvements on the date of their acquisition by petitioner. Petitioner offered in evidence Exhibit 8, which was admitted without objection. However, it is merely a worksheet prepared at the end of 1941 by petitioner's attorney, accountant, and assistant secretary for the purpose of arriving at a proper depreciation schedule. This is not proof of cost of the improvements, for it was necessary to allocate the original lump sum cost of land and improvements between such land and improvements in proportion to the values of each; and there is no proof as to the qualifications of the authors of the exhibit to determine such values. Exhibit 9 also purports to allocate the purchase price between land and improvements, but there is no proof even as to who prepared it. Exhibits 2 and 3, the income tax returns of petitioner, contain statements (in claiming depreciation) as to the allocated values, but those are of course self-serving and may not be given weight. The only other evidence of the cost of these improvements was the oral testimony of one Lamkin, who was not qualified to testify with respect to improvements on tracts other than that which formerly belonged to him. As to the improvements on his own tract which he sold to the promoters, he testified as to certain named improvements, and his investment therein, and that a peach orchard on the land was worth about $6,360 at the time of purchase by petitioner, but the record contains no evidence of cost to petitioner of those improvements on the date it acquired them. There is no evidence as to how purchaser and seller allocated between land and improvements in transacting the matter. It is entirely consistent with the state of the record in this case (particularly considering the purpose of the purchaser as to use of the land "to be used exclusively for the purpose of bivouac training area and target range") that the entire cost to petitioner went to the purchase of the land. We are of

the opinion that petitioner has failed to sustain its burden of proving the cost to it at the time of acquisition by it of the various improvements on the Brock, Lamkin, Johnson and Watson, and Windham tracts.

We hold, therefore, that petitioner is not entitled to a deduction for depreciation in 1941 or in 1942.

The next question is whether petitioner is entitled to a deduction under section 23 (f) of the code [10] claimed by it in its return for 1942 for a loss allegedly resulting from the destruction by fire of "2 Story Ranch House, Garage, Barns, Corrals" on the Windham tract, one of those as to which we have just considered the question of depreciation. Loss is claimed in the net amount of $2,187.50 ($2,500 less depreciation previously allowed in the amount of $312.50). There being, as above concluded, no proof of the value of the improvements destroyed by the fire, the Commissioner's disallowance of this deduction must be sustained.

The computation under Rule 50 pursuant to our determination of the issues above will resolve the question whether respondent erred in determining that petitioner is liable for a deficiency in excess profits taxes for 1941. We further hold that, if excess profits taxes are due from petitioner for 1941, petitioner is liable for a 25 percent penalty thereon, pursuant to section 291 of the code, *Burford Oil Co.*, 4 T. C. 613.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK, *J.*, dissenting: I disagree with the holding that the taxable period of this taxable entity began on April 25, 1941, when the application for the charter was filed with the Secretary of State of Texas. The charter wasn't actually issued until May 8, yet the opinion points out that the corporation could be a taxable entity, for Federal income tax purposes, before it became a complete legal entity under the laws of the state. The laws of Texas are not controlling in deciding this question. I think it became a taxable entity for Federal income tax purposes even before it filed its application for the charter.

This case is distinguishable from others in which one corporation succeeded to the business of another or in which the incorporators carried on a business for their own benefit prior to turning it over to a corporation. Here the incorporators actually started the business on behalf of the corporation then being organized, income was received from that business prior to the application for the charter, and the

---

[10] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions.

*     *     *     *     *     *     *

(f) LOSSES BY CORPORATIONS.—In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.

receipts were retained for the benefit of the corporation and not by or for the benefit of the promoters. There would have been a taxable entity for Federal income tax purposes and its period would have begun before April 25 if no application for a charter had been made during 1941.

Leases were entered into in the name of the corporation and on its behalf, and it received the rents from those leases for a period prior to April 25. If this taxable entity is not taxable with that income, then who is? Furthermore, the petitioner should not be taxed with the income for the long period, while at the same time it is held that the short period is the taxable period. To do so would result in distortion when we come to the problem of annualizing the income for the purpose of the excess profits tax. I think we should take the full income for the full period.

The petitioner is not entitled to any depreciation on the improvements on the land for an additional reason not stated in the majority opinion, and that is because the improvements were never used and were never intended to be used in the business of the petitioner. It acquired the land for the purpose of leasing it to the United States Government for a camp site. The Government had no interest in the improvements and the petitioner knew that. Therefore, the cost of any improvements under such circumstances should go into the cost of the land and should not be recovered through a deduction either for depreciation or loss from destruction. Cf. Regulations 111, § 29.23 (e)–2; *Robert B. Griffin*, 17 B. T. A. 255; *Lansburgh & Brother, Inc.*, 23 B. T. A. 66; *Liberty Baking Co.* v. *Heiner*, 37 Fed. (2d) 703.

MELLOTT and OPPER, *JJ.*, agree with this dissent.