Mutual Loan and Savings Company of West Palm Beach, Florida, a Florida Corporation v. Commissioner.
Mutual Loan & Sav. Co. v. Commissioner
Docket No. 15508.
United States Tax Court
1949 Tax Ct. Memo LEXIS 250; 8 T.C.M. (CCH) 203; T.C.M. (RIA) 49050; February 28, 1949
*250 In the taxable year petitioner was the owner of defaulted bonds of two Florida municipalities, together with defaulted detached interest coupons and a participating certificate evidencing ownership in unpaid detached coupons deposited with a trustee. In that year these bonds were refunded as a result of proceedings brought in the United States District Court under the Bankruptcy Act as amended. In place of the original defaulted bonds and interest coupons, petitioner received new bonds carrying a lower rate of interest and an extended maturity date. It also received such refunding interest-bearing bonds in place of the non-interest-bearing detached interest coupons. Held, that the refunding bonds thus received by petitioner were substantially different from the securities surrendered, and such transactions resulted in gain or loss as an exchange within the purview of section 112(a) of the Internal Revenue Code. William H. Cook, Esq., West Palm Beach, Fla., for the petitioner. Newman A. Townsend, Jr., Esq., for the respondent. LEECH
Memorandum Opinion LEECH, Judge: Respondent has determined a deficiency in income tax of $1,458.63 and a deficiency in personal holding company surtax of $1,883.21 for the calendar year 1942. By amendment to the answer, the respondent asks an increase in the deficiency in income tax to $1,526.13. The case was submitted upon a stipulation of facts which we include herein by reference as our findings of fact. The question for decision is whether petitioner realized *252 a taxable gain in 1942 when it exchanged bonds and detached interest coupons of the City of Fort Pierce, Florida, and a certificate of indebtedness and detached interest coupons of the City of Vero Beach, Florida, all of which were in default, for refunding bonds of the respective municipalities. There is no dispute between the parties as to the cost to petitioner of the property involved, its market value on the dates of the exchanges, and the fair market value on those dates of the refunding bonds received. [The Facts] Briefly stated, the facts are that petitioner is a personal holding company incorporated under the laws of Florida. Its income and personal holding company tax returns for the calendar year 1942 were filed with the collector of internal revenue for the district of Florida. The City of Fort Pierce and the City of Vero Beach are municipal corporations organized under the laws of the State of Florida. Since prior to 1937, the bonds and other obligations of both of these municipalities were in default. On December 3, 1937, the petitioner purchased a group of Fort Pierce municipal bonds and detached interest coupons, all of which were in default. Some of the bonds *253 were subsequently sold, but on January 1, 1942, the petitioner still held the following: Type of Obligation
Par Value
Cost
A 6% Street Improvement Bond, coupon, issued April 14, 1928, and due April 14,
1943, (non-registered)
$1,000 $300
A 6% Municipal Refunding Bond, coupon, issued March 16, 1929, and due March
16, 1950, (non-registered)
1,000
300
Detached interest coupons
2,370
None
On March 10, 1942, pursuant to the city's modified plan of composition, the petitioner exchanged the two bonds and the detached interest coupons for four $1,000 Fort Pierce refunding bonds plus $269.16 in cash and a refunding credit for interest accruals of $417.83. Under the plan of composition, which had been approved in 1941 by the United States District Court for the Southern District of Florida, defaulted bonds and other obligations of the city were refundable par for par subject, however, to a two per cent exchange fee. The refunding bonds received by the petitioner in this exchange were dated July 1, 1937, and were due July 1, 1972, but could be called upon any interest payment date prior to maturity. They were coupon bonds which bore interest, payable semiannually, *254 as follows: 1 1/2% per annum for a period of one year from date thereof 2% per annum for the next succeeding three years 2 1/2% per annum for the next succeeding three years 3% per annum for the next succeeding three years 4% per annum for the next succeeding five years 5% per annum thereafter The plan of composition provided for the creation of a sinking fund to care for principal and interest payments on the refunding bonds. On its books the petitioner treated the $269.17 cash payment as tax-exempt interest, and it increased the book value or cost of the two defaulted bonds by $55.84 to capitalize costs of the exchange. The $417.83 refunding credit was subsequently sold for $292.48, and the latter amount was taken up by the petitioner as income. In the notice of deficiency the respondent did not make any adjustment with respect to the petitioner's treatment of these items. At the time of the exchange on March 10, 1942, the fair market value of the defaulted bonds and detached interest coupons was 67 1/2 per cent of par value less the two per cent refunding charge. On the same date the fair market value of the refunding bonds was 67 1/2 per cent of their par value. *255 In the exchange the petitioner realized a gain computed as follows: Market value 2 refunding bonds received in exchange for 2 defaulted bonds
$1,350.00
Less: Cost of old bonds
$600.00
Cost of exchange
55.84
655.84
Gain on exchange of bonds for bonds
$ 694.16
Market value of 2 refunding bonds received in exchange for detached coupons
$1,350.00
Less: Cost of coupons
None
Gain on exchange of bonds for coupons
1,350.00
Total gain on Fort Pierce Exchange
$2,044.16
On December 3, 1937, the petitioner acquired a large block of Vero Beach six per cent and seven per cent municipal bonds and interest coupons detached therefrom, all of which were in default. The bonds were purchased at a flat price of 30, and no part of the cost was allocated on the petitioner's books to the detached interest coupons. In 1939 the United States District Court for the Southern District of Florida approved a modified plan of composition for refunding the defaulted indebtedness of the City of Vero Beach. Under this plan defaulted bonds were refundable par for par, but the creditors were required to waive 30 per cent of the face value of all obligations *256 representing accrued interest. The plan provided for an exchange fee of four per cent and for the creation of a sinking fund to cover principal and interest payments. Pursuant to the plan of composition the petitioner exchanged the defaulted bonds for refunding bonds in 1940, and at the same time it deposited with an escrow agent interest coupons which had a face value of $14,263.65. As evidence of this deposit the escrow agent issued Certificate of Indebtedness No. 127 in which the petitioner had an interest of $9,970.55, this interest representing 70 per cent of the face value of the coupons deposited. In 1940 the petitioner's interest in Certificate of Indebtedness No. 127 was taken up on its books for $2,492.64, and this amount was reported as taxable income during that year. This adjustment has been accepted by the respondent, and it is not in dispute in this case. Thereafter, on November 20, 1941, the petitioner acquired an additional interest of $29.45 in Certificate of Indebtedness No. 127 for a consideration of $25.03. This acquisition increased the petitioner's total interest in Certificate of Indebtedness No. 127 to $10,000 and its cost or basis in the certificate to *257 $2,517.67. On February 7, 1942, the petitioner exchanged its $10,000 interest in Certificate of Indebtedness No. 127 for six $1,000 City of Vero Beach Refunding Bonds, "Series A", and four $1,000 City of Vero Beach Refunding Bonds, "Series B", plus $767.24 in cash. Each of the refunding bonds was dated January 1, 1937, and had a maturity date of January 1, 1972. They were subject to call, however, at par on any interest date prior to maturity, and bore interest, payable semiannually, at the following rates: 2% per annum for a period of three years from the date thereof 3% per annum for the next succeeding seven years 4% per annum for the next succeeding ten years 5% per annum thereafter The bonds were coupon bonds which could be registered as to principal only at the option of the holder, and by consent of the holder and the city they could be registered as to both principal and interest. At the time of the exchange on February 7, 1942, the fair market value of Certificate of Indebtedness No. 127 was 70 per cent of its par value less the four per cent refunding charge. On the same date the fair market value of the "Series A" and "Series B" refunding bonds was 70 per cent *258 of their par value. On its books the petitioner treated the cash payment of $767.24 as tax-exempt interest, and it capitalized the sum of $32.76, representing expenses attendant upon the exchange, as an addition to the cost of the Certificate of Indebtedness. These adjustments are not at issue in this case. On August 31, 1942, the petitioner exchanged another group of detached interest coupons, which had a face value of $4,500 and were part of the group purchased on December 3, 1937, for three $1,000 Vero Beach "Series A" Refunding bonds plus cash of $341.55. In the exchange the petitioner waived 30 per cent of the defaulted coupons in accordance with the plan of composition, and after this waiver the remaining 70 per cent had a fair market value equal to 65 per cent of their face value less the four per cent refunding charge. On the date of the exchange the fair market value of the refunding bonds was 65 per cent of their par value. No cost was allocated on the petitioner's books to the $4,500 in detached coupons which were exchanged on August 31, 1942. The $341.55 cash payment received in that exchange was treated by the petitioner in part as tax-exempt interest and in part *259 as taxable income, and the treatment accorded it is not now in dispute. In the exchanges made on February 7, 1942, and August 31, 1942, the petitioner realized a gain computed as follows: Market value of 10 refunding bonds received in exchange for interest in Cer-
tificate of Indebtedness No. 127
$7,000.00
Less (a) Amount taken up as income in 1940
$2,492.64
(b) Purchase of additional interest - 11/20/41
25.03
(c) Expense of exchange capitalized
32.76
2,550.43
Total gain on exchange of Certificate of Indebtedness for bonds
$4,449.57
Market value 3 refunding bonds received in exchange for detached interest
coupons
$1,950.00
Less: Cost
None
Total gain on exchange of coupons for bonds
1,950.00
Total gain on Vero Beach exchanges
$6,399.57
Section 112(a) of the Internal Revenue Code provides that upon an exchange of property the amount of gain or loss shall be recognized with certain exceptions. These exceptions are set out in section 112(b)(1) to (10), inclusive. Section 112(b)(1) has no application here as it expressly excludes exchanges of stocks, bonds or securities. Neither have the exceptions provided *260 by subsections (b)(2) to (10), inclusive. They provide an exemption from tax on gains in connection with complete liquidation, or in connection with exchanges effecting reorganizations. Obviously there was no such liquidation here. And since the bonds involved are those of a municipal corporation, there was no statutory reorganization. Thomas Emery, 8 T.C. 979, affd., 166 Fed. (2d) 27. Petitioner contends that the transactions here in question did not result in taxable gain for the reason that they were not in fact exchanges within the purview of section 112(a). The argument is that under the constitution and laws of the State of Florida, as uniformity construed by the courts of that state, the issue of refunding bonds by a municipality does not constitute a satisfaction of the debt of such municipality represented by the old bonds. [1] Upon this premise it is urged that since these refunding transactions created no new indebtedness but merely continued the old with changes consisting of reductions in the interest rates, extensions of time for payment and waivers of portions of the principal of certain of the detached interest coupons, no exchange occurred. *261 Assuming the correctness of the stated premise and its application here, we do not agree with petitioner's conclusion that such a transaction can not be deemed an exchange of property as this term is used *262 in the federal taxing acts. Burk-Waggoner Oil Association v. Hopkins, 269 U.S. 110, Berry Brothers Trust, 9 T.C. 71. If the refunding bonds carried conditions materially different from those of the original bonds, the property rights of the recipient of the refunding bonds are substantially changed. The property which each recipient then possessed is substantially different from the property represented by the old bonds. Under such conditions, we think, an "exchange" would be effected as that term is used in section 112, supra. The test uniformly applied in determining whether a transaction does constitute an exchange within the purview of section 112, supra, is whether the material conditions of the refunding bonds differed substantially from the conditions of the old securities exchanged therefor. Applying this test here, we find that under the terms of the refunding bonds the time for payment was extended, the rate of interest was reduced, and part of the principal in the case of certain of the detached coupons was waived. In addition, non-interest-bearing coupons were exchanged for new interest-bearing refunding bonds. These differences are very material. *263 We think the refunding bonds were not substantially similar to the old bonds surrendered. Petitioner relies upon our decision in Motor Products Corp., 47 B.T.A. 983; affd. per cur., 142 Fed. (2d) 449. We think that case is clearly distinguishable. Our conclusion there, that no exchange was effected, was predicated specifically upon the finding that the refunding bonds were in the identical amount of the old bonds surrendered and carried the same interest rate, the only change being an extension of the maturity date which we held was not material. The present situation, we think, is controlled by the decisions in Thomas Emery, supra; Thomas Watson, 8 T.C. 569; and Girard Trust Co., Trustee, v. United States, 166 Fed. (2d) 773. In all of these cases the differences between the refunding bonds and the original bonds were no more than those here, but such differences were held there to be basic and to preclude a finding that the refunding bonds were substantially similar to the original bonds. In each of these cases the transaction was held to have resulted in an exchange of property under section 112, supra. Petitioner's *264 counsel, upon brief, has for the first time raised an alternative issue. This is that if we sustain respondent in holding the gain here realized to be taxalbe and increase the petitioner's net income in that amount, it is still not liable for a deficiency in personal holding company surtax. This alternative issue was not set out in the petition nor raised at the hearing and, consequently, is not timely. We have held that an issue first brought to the Court's attention on brief will not be considered. Camp Wolters Land Co., 5 T.C. 336; Louis Wellhouse, Jr., 3 T.C. 363. It may be said, however, that even though the issue were timely raised, we could not sustain the petitioner since we see no error in respondent's computation. Respondent's request for an increase of $67.50 in the deficiency in income tax, making a total deficiency in such tax of $1,526.13, is granted, and for the deficiency as thus increased. Decision will be entered for the respondent. Footnotes
1. It is noted that the decisions of the Florida courts cited by petitioner were in cases where there was a voluntary composition of the bonded indebtedness by action of the bondholders and the municipalities, whereas in the two instances here involved the composition was effected under a petition filed by the municipality with the United States District Court under the provisions of the Federal Bankruptcy Act as amended. In each situation the court, after considering plans for composition, entered a final decree that the municipality is "released and discharged from any obligation of any kind or nature whatsoever, whether such obligation be evidenced by bond, coupons, or interest on bonds or coupons or any judgment rendered on any bond or coupon, of the following described securities * * *." The securities described included the old bonds. Under such conditions it might be, even in Florida, that the original indebtedness was extinguished and a new indebtedness was created.↩